**Porter L. FORTUNE, Jr., et al., Defendants-Appellants,**

v.

**David L. MOLPUS et al., Plaintiffs-Appellees.**

**No. 29659.**

United States Court of Appeals, Fifth Circuit.

May 12, 1970.

A. F. Summer, Atty. Gen. of Mississippi, William A. Allain, Asst. Atty. Gen., James E. Rankin, Special Asst. Atty. Gen., Jackson, Miss., Will A. Hickman, Oxford, Miss., for defendants-appellants.

Douglas C. Wynn, J. Wesley Watkins, III, Eugene M. Bogen, Fred C. DeLong, Jr., James L. Robertson, Greenville, Miss., for plaintiffs-appellees.

Before WISDOM, THORNBERRY, and CLARK, Circuit Judges.

### ORDER

BY THE COURT:

On February 19, 1970, the University of Mississippi chapter of the Young Democratic Clubs of Mississippi requested Chancellor Porter L. Fortune's permission to invite Tyrone Gettis, President of the Student Body at Mississippi Valley State College, to speak on the University campus February 26, 1970. During January and February the all-black student body at Gettis's college had staged almost continuous demonstrations in support of numerous demands made by them upon college officials. Chancellor Fortune concluded that Gettis's appearance as a guest speaker at the University would constitute a "clear and present danger to the institution's orderly operation". He therefore disapproved of the request, and the Young Democrats withdrew their request.

On March 4, 1970, the Young Democrats requested permission for Gettis to speak March 18, 1970. Chancellor Fortune notified them the same day that he would not approve the request. The Young Democrats, by letter to Chancellor Fortune, promptly requested a review of this denial by the Campus Review Committee. The Review Committee conducted a hearing. March 7 it disapproved the request by a vote of four to one. The Review Committee maintained no record of its hearing and assigned no written reasons for its decision.[1]

Three members of the Young Democrats (Molpus, Cupit, and Webb) then instituted a class action in the Northern District of Mississippi seeking injunctive relief to require the University to approve the plaintiffs' request for permission to invite Gettis to speak. The plaintiffs also sought an injunction to restrain the University from further interfering with the rights to assemble peaceably and to hear speakers of their choice. After a full hearing, the district court concluded that its jurisdiction was not foreclosed by Stacy v. Williams, N. D. Miss.1969, 306 F.Supp. 963. In *Stacy*, a three-judge court promulgated rules concerning guest speakers at institutions of higher learning in Mississippi. That court in its final decree "retain[ed] jurisdiction for the enforce-

1. The Committee notified the Young Democrats by letter as follows:

Mr. Tom Well          .  3/7/70
Mr. Danny Cupit
  representing the University of
  Mississippi Chapter of Young
  Democrats:
Gentlemen:
  The Campus Review Committee to which you presented a request to invite Mr. Tyrone Gettis to address your group on the University of Mississippi campus has ballotted four to one to disapprove your request, this 7 March 1970.
    Respectfully,
    /s/ Allen Cabaniss, C
    Allen Cabaniss, Chm.
    Campus Review Committee
    The University of Mississippi
    University, Miss. 38677

ment of this order and all matters relating thereto". But the rules it set forth provided that "[a]ny sponsoring organization aggrieved by the action of the Campus Review Committee in denying the request may obtain judicial review thereof upon application to any court of competent jurisdiction, state or federal, by presenting its verified petition setting forth the grounds of complaint * * *." 306 F.Supp. at 980. The district court here concluded that it could not amend the rules adopted in *Stacy*, establish procedural guidelines for the Campus Review Committee, or prohibit future interference with peaceable assembly, but that it could rule on the propriety of the University's refusal to allow Gettis to speak on campus under the Young Democrats' sponsorship.[2]

The rules set out in *Stacy* do not provide a procedure whereby the head of the University or the Review Committee is to reach a decision. They do provide, however, that the Review Committee shall give the request "de novo consideration". Since the Review Committee maintained no record of its hearing, the district court concluded that in reviewing the Committee's decision, the court must receive live testimony and conduct a de novo hearing of its own. Since first amendment rights were at stake, moreover, the district court concluded that the university bore the burden of proof

to show by clear and convincing evidence that the speech of Mr. Gettis will constitute a clear and present danger to the University's orderly operation because of the speaker's advocacy of the willful damage and destruction, or seizure and subversion, of the buildings or other property of the University; or the forcible disruption or impairment of, or interference with, the regularly scheduled classes or other educational functions of the University, or the physical harm, coercion, intimidation, or other invasion of lawful rights, of the officials, faculty members or students of the University; or some other campus disorder of a violent nature.

On the basis of the evidence set out in the margin,[3] the district court concluded

2. When it appeared that another meeting of similar tenor was scheduled for March 18, the plaintiffs advised the district court that a later date could be arranged for Gettis's speech. Briefs and argument proceeded on the assumption that the Gettis speech would not take place March 18.

3. The district court, at 311 F.Supp., at 240 stated:

The evidence shows that Tyrone Gettis has been or is now the president of the student body of the Mississippi Valley State College. The student body of the college is all black. Mr. Gettis is a member of the Negro race.

Prior to the disruptions at the college, hereafter mentioned, the enrollment was approximately two thousand students. During the months of January and February 1970, the student body staged almost continuous demonstrations in support of numerous demands made by them upon college officials. It is not necessary to detail the nature and extent of the demonstrations except to say that as a result of the student's boycott of classes and demonstrations the officials closed the college for a time. Later the college was opened for new registration. As a result of the action by college officials a large number of students did not return to school.

Mr. Gettis was a leader in the student revolt, and assumed an active part therein. On one occasion a faculty meeting at the college was interrupted. Mr. Gettis is shown to have used abusive language toward one of the officials. On another occasion, the students forceably occupied a building on the campus and held a meeting there. Mr. Gettis is shown to have threatened a campus police officer with bodily harm. Rocks were thrown on occasions. The students stopped an automobile and tried to turn it over. It is sufficient to say that there were numerous incidents of campus disorder and interruption of regularly scheduled classes and other educational functions. Some of the college property was damaged, though only to a slight degree.

The evidence did not show that Mr. Gettis personally destroyed or damaged any property. or harmed any person. It was shown, however, in fact, admitted by plaintiffs, that Mr. Gettis

was one of the leaders of the demonstrations, and student revolt.

The University of Mississippi has a student body in excess of six thousand students, of which not more than two hundred are black students.

There has not been a disturbance of major importance on the University campus since the Meredith incident in the early sixties. However, a short time before Chancellor Fortune received the first request from UMYD for Mr. Gettis to speak on the campus, there were two or three incidents of a minor nature involving black students. On one occasion a concert or musical at the coliseum was interrupted by black students. These students went uninvited upon the stage. At about that same time a group of black students appeared on the Chancellor's lawn demanding an audience with him. Some of the students in the group used profane and obscene language. These incidents indicated unrest among the black students on the campus.

When the first request for Mr. Gettis to speak on the campus was received by Chancellor Fortune, he was aware of the unrest of the black students, on the campus. He initiated an investigation of Mr. Gettis in order to determine whether the request should be honored. Newspaper clippings concerning the incidents on the campus of Mississippi Valley State College were obtained and reviewed. Chancellor Fortune talked with college officials about the matter. After reviewing the evidence received from these sources, Chancellor Fortune determined that the proposed speech of Mr. Gettis, would constitute a clear and present danger to the University's orderly operation in the particulars above outlined, especially in view of the black student unrest.

The evidence shows that before UMYD initiated the request, one of the attorneys of UMYD visited Mr. Gettis at Itta Bena and talked with him about the proposed speech. Mr. Gettis intended to speak on a student's viewpoint of the crisis existing at Mississippi Valley State College. The members of the UMYD were interested in having a first hand report of the matter. The revolt had been given wide newspaper, radio and television coverage. Mr. Gettis assured the attorney that his speech would be devoted entirely to the assigned subject.

Thereafter, several of the members of the UMYD talked with Mr. Gettis by telephone and were given the same assurance. One member of the group visited the campus of Mississippi Valley State College to evaluate the problem first hand.

At the hearing the plaintiffs introduced, as witnesses, the above mentioned attorney and three members of UMYD who testified to facts substantially as hereinbefore stated. They also introduced as witnesses a student member of the Old Miss M Club (football), who is not a member of UMYD, one of the leaders of the black students at the University and three members of the University faculty. One of the faculty members is a professor of English at the University, and the other two are professors in the School of Law. Each witness testified that he was conversant with the situation at the University and, in his opinion, the appearance of Mr. Gettis on the campus would not in any manner constitute a clear and present danger to the orderly operation of the University.

The defendants introduced the vice-president of the Mississippi Valley State College, a member of the college campus police force, and Chancellor Fortune as witnesses to sustain the viewpoint of the University. Chancellor Fortune testified in regard to the investigation of Mr. Gettis by his office, and gave his reasons for arriving at the conclusion that the request of UMYD to invite Mr. Gettis to the campus should not be approved. Chancellor Fortune determined that the proposed speech by Mr. Gettis would constitute a clear and present danger to the University's orderly operation in the particulars above mentioned. Chancellor Fortune was not fearful that Mr. Gettis' appearance on the campus would result in disorders such as occurred at Mississippi Valley State College. He testified that he was fully cognizant of the fact that the student body at the University involved a much larger group than did that at Mississippi Valley State College, and that only a few of the students at the University were black, while all of the students at the college were black students. Chancellor Fortune expressed the opinion that the University had ample resources to control any disorder which might occur on the campus. Chancellor Fortune's main concern was to avoid a disturbance of any nature.

The vice-president and police officer from Mississippi Valley State College testified in regard to the campus revolt of which Mr. Gettis was one of the leaders.

that Mr. Gettis's appearance on the campus would not present a clear and present danger to the orderly operation of the University. He, therefore, reversed the decision of the Campus Review Committee and directed University officials to approve the Young Democrats' request.

The district court entered its order March 31, 1970. April 6, 1970, that court denied the University's motion for a stay of the order pending appeal, saying in chambers that "a stay would be tantamount to denying the plaintiffs the right which they seek, because it would be impossible to perfect this appeal and for the appeal to be heard and decided in time for Mr. Gettis to make his speech at the university on this very timely subject".

April 16, 1970, the University petitioned Circuit Judge James P. Coleman for a stay of the March 31 order. Judge Coleman believed that the University had not abused its discretion under *Stacy* in refusing to allow Gettis to speak. He concluded, therefore, that the appeal was not without merit, and granted a temporary stay April 17, 1970, "subject to the rights of the appellees, if they be so advised, to move the undersigned for a dissolution of this order or to move that it be referred to a panel of this Court for its further consideration and disposition, in keeping with the usual procedure of the Court on such matters".

The plaintiffs have pursued the second option of Judge Coleman's order. They have moved this Court to vacate his order granting a temporary stay pending appeal. Plaintiffs assert by affidavit of their lawyer that neither they nor their attorneys received any notice

of the University's application to Judge Coleman for a stay until Judge Coleman's order granting the stay issued April 17, 1970. In its response to the plaintiffs' motion to vacate the order, the University has not replied to this assertion. The University contends that the plaintiffs' decision to refer the matter to the Court rather than petition Judge Coleman to dissolve his stay places before the Court the merits of the University's motion for a stay pending appeal (filed with the Court April 21, 1970) and to advance the case for hearing. The plaintiffs do not oppose the motion to advance the case for hearing, but maintain that the correctness of the single-judge stay pending appeal is an issue as well as the propriety of the Court's now issuing a stay.

■ The merits of this case are not before us. They may be determined at a later date by an appropriate panel of this Court.[4] The plaintiffs have moved to vacate Judge Coleman's order of April 17. Rule 8(a) of the Federal Rules of Appellate Procedure provides that in an application for a stay of a district court's order "[r]easonable notice of the motion shall be given to all parties". Thus, the uncontested affidavit of the plaintiffs' attorney casts serious doubt on the April 17 order. *See* Carroll v. President & Commissioners of Princess Anne, 1968, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325. But Judge Coleman's temporary order specifically provides that the matter may be further considered by the Court. The terms of his order therefore contemplate that the order would expire upon the issuance of an order duly arrived at by a panel of the Court. The University considers its motion to the Court for a stay to be

---

4. Our action probably does decide whether Gettis will speak on campus. To that extent our result goes to the merits and, in one sense, to the very heart of the case. What we do not decide, however, is the correctness of the district court's decision generally—for example, the procedure in reviewing a Review Committee which maintains no record of its hearing; where the burden of proof does lie; what standard the Chancellor and Review Committee must meet to have their decision sustained; and the efficacy of Stacy v. Williams. On all of these, which are also the "merits" of the case, we make no final decision, although we must canvass some of them preliminarily to determine whether to grant a stay.

properly before us. We conclude that we have jurisdiction to rule on the request for a stay.

■■■ This Court has said that a party seeking a stay must satisfy four basic conditions:

> (1) A likelihood that the petitioner will prevail on the merits of the appeal; (2) Irreparable injury to the petitioner unless the stay is granted; (3) No substantial harm to other interested persons; and (4) No harm to the public interest.

Pitcher v. Laird, 5 Cir. 1969, 415 F.2d 743, 744–745, *quoting* Covington v. Schwartz, N.D.Cal.1964, 230 F.Supp. 249. We conclude that under these standards the University's request for a stay must fail.

(1) The University has not shown a real likelihood that it will prevail on the merits. It advances three grounds for overruling the district court's decision. It contends that it was denied due process because it did not know until the opinion was released that the burden of proof lay upon it to sustain its action; that the district court encroached upon the jurisdiction of the *Stacy* court; and that the district court's statement that the Chancellor and the Review Committee had acted in good faith and in what they considered the University's best interests required an affirmance of their decisions. First, we consider it highly problematic that the University can claim prejudice on the ground that the district court at first believed the burden of proof to lie on the other side. *Stacy* provided that a court should make its decision "as may be proper under the law and facts". 306 F.Supp. at 980.

The University's lawyer was equipped to discover what the law on the burden of proof was and present sufficient evidence to meet that burden. With regard to the second ground, *Stacy* specifically provided for judicial review of the Review Committee's decisions. There was no encroachment on the *Stacy* court simply because the district court here was compelled to hold a de novo hearing. On the final point, *Stacy* does not contemplate judicial review of the Chancellor's but only of the Review Committee's decision. That decision is to be based on a de novo consideration of the issues. But here the Committee maintained no record of its hearing that the district court could review. The district court was therefore compelled to hold its own hearing de novo. We consider it unlikely that its detailed findings will be reversed on appeal as clearly erroneous. Nor do we believe simply because some evidence at the district court's de novo hearing might have sustained the Review Committee's decision that the Review Committee must therefore be affirmed even though we cannot know that the Review Committee ever heard or relied on such evidence. There is no necessary inconsistency between finding the Review Committee to have acted in good faith and yet to have acted erroneously. The district court was merely seeking to soften its reversal of the Chancellor and Committee.[5] Finally, even were we to conclude that the University might prevail on appeal, it does not meet the other conditions that Pitcher v. Laird sets forth.[6]

(2) The question of irreparable injury to the petitioner is the very issue of this case. At this point, a very convinc-

---

5. The district court stated:

> The decision in this case is not to be considered as critical of Chancellor Fortune or the Campus Review Committee. The Court is positive that they acted in good faith and in accord with that which they thought would be for the best interest of the University. However, the Court feels that Chancellor Fortune and the Campus Review Committee were overly cautious in

> their actions and that the danger of disorder at the University resulting from Mr. Gettis' speech, is not real or apparent.

6. Of course, all that we say here is in the context of the *likelihood* of reversal on appeal. In no way does it bind the panel of this Court that eventually considers the appeal.

ing district court opinion has disposed of that feared injury.

(3) and (4) Since significant discussion of a topic of current issue would be stifled by granting the stay, we consider that there is substantial harm to the plaintiffs, students at the University, and the public interest generally. As the district court has already noted, granting of a stay pending appeal would probably require postponement of the speech until the fall term, long after the present controversy is past.

The University additionally contends that recent events have changed and exacerbated the situation since the time of the district court's opinion and order. In denying the University's request for a stay, we do not preclude it from seeking in the district court a modification of the order if changed circumstances so warrant.

Nothing said by the district court or by us should be taken as condoning a speech that advocates destruction or damage of University property, or the seizure of its buildings or other campus disorder of a violent nature. The fundamental basis upon which courts have historically struck down prior restraints on freedom of speech has been that the time, place, and content of the proposed speech were such as would afford a time to talk. In the classic words of Mr. Justice Brandeis's concurrence in Whitney v. California, 1927, 274 U.S. 357, 47 S. Ct. 641, 71 L.Ed. 1095, "No danger flowing from speech can be deemed clear and present, unless the incident of the evil apprehended is so imminent that it may befall before there is opportunity for full discussion. If there be time to expose through discussion the falsehood and fallacies, to avert the evil by the processes of education, the remedy to be applied is more speech, not enforced silence". 274 U.S. at 377, 47 S.Ct. at 649.

Time, place and the content of the speech are the crucial points a court must always weigh in determining whether words should be proscribed in advance of their utterance. *Compare*

Terminiello v. Chicago, 1949, 337 U.S. 1, 69 S.Ct. 894, 93 L.Ed. 1131, with Feiner v. New York, 1951, 340 U.S. 315, 71 S. Ct. 303, 95 L.Ed. 267.

The proper weighing of these factors in today's atmosphere is left to the discretion of the district court, should modification of the original order be sought.

It is ordered that the motion of appellees to vacate the order granting a temporary stay pending appeal entered April 17, 1970, by Honorable James P. Coleman, Circuit Judge, in this cause be and the same is here granted; that the motion of appellants for a stay pending appeal be and the same is hereby denied; that the motion of appellees for an expedited hearing be, and the same is hereby granted; briefs for appellants and appellees, shall be filed simultaneously, on or before June 1, 1970.