**STATE OF SOUTH CAROLINA, Plaintiff,**

v.

**UNITED STATES of America, et al., Defendants,**

and

**The National Association For the Advancement of Colored People, Inc., et al., Defendants-Intervenors.**

**Civ. A. No. 83–3626.**

United States District Court, District of Columbia.

April 26, 1984.

---

Terrell L. Glenn, McNair, Glenn, Konduros, Corley, Singletary, Porter & Dibble, Columbia, S.C., for plaintiff.

Paul F. Hancock, Dept. Justice Civil Rights Div., Voting Section, Washington, D.C., Margaret Ford, Asst. Gen. Counsel, NAACP, Brooklyn, N.Y., for defendants.

Before EDWARDS, Circuit Judge, and GESELL and JACKSON, District Judges.

## MEMORANDUM AND ORDER

This case is now before the three-judge court upon motions by defendant United States and defendant-intervenor the National Association for the Advancement of Colored People, Inc. ("NAACP") to enjoin the State of South Carolina from implementing Act 257 of Acts and Joint Resolutions of South Carolina (1983) ("Act 257"), a state senate reapportionment plan which has not yet been precleared as required by Section 5 of the Voting Rights Act of 1965, as amended, 42 U.S.C. § 1973c.[1]

---

1. The general assembly of South Carolina enacted Act 257 on November 9, 1983, which was signed by the Governor on November 15, 1983, to change its senate apportionment plan, because the 1980 Decennial Census disclosed that the senate apportionment under the existing legislation violated the one-man-one-vote principle of *Reynolds v. Sims*, 377 U.S. 533, 84 S.Ct. 1362, 12 L.Ed.2d 506 (1964), *reh'g denied*, 379 U.S. 870, 85 S.Ct. 12, 13 L.Ed.2d 76 (1964). Aware that Section 5 of the Voting Rights Act provides that a covered jurisdiction may not implement a voting change without preclearance from the Attorney General of the United States or a favorable judgment from the U.S. District Court for the District of Columbia, *see Georgia v. United States*, 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *Perkins v. Matthews*, 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); *Allen v. State Board of Elections*, 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), South Carolina filed a complaint for declaratory judgment in this Court on December 6, 1983, seeking a determination that Act 257 "does not have the purpose or effect of denying or abridging the right to vote on account of race, color or previous condition of servitude," choosing, as it is entitled to do, this course of action rather than first asking for preclearance from the Attorney General. The case is presently set for trial on the merits before the three-judge court on June 4, 1984. State law fixes either June 12 or July 24, 1984, as the date for primary elections for the state senate, depending upon which state law is then

Defendants assert that notwithstanding the pendency of this action the State began to implement Act 257 by opening the candidate qualification process between March 16 and March 30, 1984, requiring political parties intending to hold primaries to accept candidacy notices for the state senate, the electoral districts in which the candidates will stand for election being defined by Act 257's redistricting plan.[2] South Carolina responds that "mere candidate filing" does not constitute implementation, but even if it does, it would be inequitable to enjoin it, and, in any event, the political parties which actually nominate senate candidates based upon the results of the primary elections are not before the Court and cannot, therefore, be forbidden to accept notices of candidacy.

The relevant facts, which are primarily the chronology of this litigation and the legislative acts of South Carolina since issue was joined, are not in dispute. On January 24, 1984, at plaintiff's behest, this Court established an expedited schedule which contemplated a resolution of the case in time for the primary elections as then set by state law for June 12th. Defendants' answers and initial discovery responses were timely filed by February 8th, from which it was apparent that both the Attorney General and the NAACP had objections of substance to Act 257.

On February 24th the Assistant Attorney General of the Civil Rights Division of the Department of Justice wrote counsel for South Carolina proposing that the parties enter into negotiations looking towards modifications of the redistricting plan which would obviate the Attorney General's objections altogether, or, alternatively, an agreement upon an interim plan for the 1984 elections which would leave the legality of Act 257 for later determination without unduly disrupting the state's normal electoral processes. He warned, however, that for the State to proceed with the process of candidate qualification beginning March 16th without such an agreement would, in the Department's view, be unlawful.

Almost simultaneously the South Carolina senate began consideration of a proposed joint resolution of both houses of its general assembly ("R. 321") which would postpone *all* state primary elections for a period of six weeks to July 24, 1984, to enable this case to be tried to completion and decided with sufficient time remaining for the candidates to campaign. It did nothing, however, about postponing the impending March 16–30 candidate qualification period, providing only that the process would be reopened at an unspecified future date should this Court withhold approval of Act 257. The legislation as ultimately passed by the general assembly and signed by the governor on March 8, 1984, postponed only the *senate* primaries, leaving the original March 16–30 filing period and the provisional reopening in the event of an adverse decision intact.

On March 12th South Carolina transmitted R. 321 to the Assistant Attorney General for preclearance, two days before senate candidates were to begin their submissions of notices of candidacy, by a letter from its attorney which left no doubt that the State was proceeding on its own with the candidate qualification process then imminent. It made no mention at all of the offer of conciliation.

On March 20th the Assistant Attorney General replied, interposing an objection to R. 321, including the postponement of the primaries to July 24th, and on the succeeding days, respectively, the NAACP and the United States filed their motions to enjoin South Carolina from "implementing" Act 257 "unless and until this Court rules that

---

in force. The general election is expected to take place November 6, 1984.

**2.** Act 257 purported to establish 46 single-member voting districts for the senate in lieu of the 16 mostly multi-member districts from which 46 state senators had been elected previously. De-

fendants contend Act 257 will deny or abridge the right to vote on account of race or color, because some of its districts are irregularly configured, fragmenting minority concentrations in certain areas for the deliberate purpose of minimizing minority voting strength.

Act 257 ... is entitled to Section 5 preclearance." [3]

The parties' principal point of contention centers on the meaning of the concept of "implementation" of a change in voting procedures, with the United States and the NAACP arguing that it encompasses "commencement of any part of the election process" and South Carolina contending that it occurs at the earliest at some point after the candidate filing period, and perhaps even after the primary.

South Carolina assures the Court that it will not hold its state senate primary elections, now scheduled for June 12, 1984 (unless R. 321 is precleared, in which case they will occur July 24th), until Act 257 is precleared. Although it agrees not to conduct its primaries prior to preclearance, however, it clearly believes itself entitled and intends to conduct the antecedent activities necessary to prepare for them prior to preclearance, which include, we know, at the least the candidate qualification filing presumably completed on March 30, 1984, subject, of course, to reopening pursuant to R. 321. (The other activities are not specified by South Carolina, but we surmise they refer to such matters as printing ballots, reserving polling places, coordinating election judges, and advertising the elections). Only if it is allowed to conduct these activities now, the State asserts, will it be able to go forward with the primary elections whenever they are to take place.

Thus, this Court must determine whether candidate qualification filing and certain other steps being taken by the State of South Carolina *in preparation for* the primary elections constitute "implementation"

of an unprecleared voting change. If they are, the United States asks the Court to declare the candidate qualification process invalid, require the State to establish an orderly election schedule to begin only *after* Act 257 has been precleared, and permit both candidates who have already qualified and others who may wish to do so after preclearance stand for election. South Carolina urges that not only would such an order be otherwise inequitable as well as unnecessary, it would upset the *status quo.*[4]

Section 5 of the Voting Rights Act provides that until a voting change is precleared by either the Attorney General or the District Court for the District of Columbia, "no person shall be denied the right to vote for failure to comply with such qualification, prerequisite, standard, practice, or procedure [voting change] ...." 42 U.S.C. 1973c. Defendants contend that South Carolina cannot, absent preclearance, conduct *any* activities in preparation for the senate primaries without violating the Voting Rights Act.[5] They cite the seminal cases of *Georgia v. United States,* 411 U.S. 526, 93 S.Ct. 1702, 36 L.Ed.2d 472 (1973); *Perkins v. Matthews,* 400 U.S. 379, 91 S.Ct. 431, 27 L.Ed.2d 476 (1971); and *Allen v. State Board of Elections,* 393 U.S. 544, 89 S.Ct. 817, 22 L.Ed.2d 1 (1969), for the proposition that voting changes may not be implemented before preclearance and elections will be enjoined if they are, but they rely primarily on *Busbee v. Smith,* No. 82–0665, Slip op. (D.D.C. May 24, 1982) (order granting injunction), to support their assertions that "implementation" begins, specifically, with candidate qualification filing.

---

**3.** The NAACP filed its motion for injunction on March 21, 1984; the United States filed what it termed an application for an order to show cause why an injunction should not issue on March 22, 1984. In its opposition South Carolina treats the United States' motion as one for an injunction, and this Court will do the same.

**4.** South Carolina derives no equitable benefit, however, from the post-March 16–30 qualification *status quo* which it unilaterally brought into being knowing in advance that defendants were claiming it to be unlawful.

**5.** The NAACP argues that "implementation" refers to "any parts of the process of selecting candidates and/or members to the State Senate under Act 257" and that South Carolina has begun this process by opening the filing period for candidates. Similarly, the United States asserts that the Voting Rights Act establishes "a legal bar to commencement of any part of the election process under Act 257 prior to the time that it takes effect."

South Carolina, on the other hand, asserts that "mere candidate filing for party primaries does not constitute implementation of Act 257."[6] Rather, it says, such activity implements, if anything, the general state law, S.C.Code Ann. § 7–11–210 (1976 and Cum.Supp.), which was precleared by the Attorney General in 1978, and which provides that each prospective candidate for state or local office wishing to be placed on the primary ballot must file a "notice of candidacy and pledge" with county political party chairpersons by March 30th of a general election year.

■ South Carolina's thesis that its candidate filing procedures implement only the precleared S.C.Code Ann. § 7–11–210 is specious. Aspiring senatorial candidates in South Carolina are filing to stand for election in districts laid out by Act 257, not by Section 7–11–210 (and not by the legislation it was enacted to replace), in order to prepare for what South Carolina hopes will be an early summer primary, occurring pursuant to a precleared Act 257, well before the general election in the fall.[7] It is obvious that South Carolina is implementing the unprecleared Act 257 through candidate filing procedures, as well as any other activities it plans in anticipation of the senatorial primary.

In the virtually identical Voting Rights Act case of *Busbee v. Smith*, No. 82–0665, Slip op. at 2, 5 (D.D.C. May 24, 1982) (order granting injunction), in which the State of Georgia had declared its intention to commence a congressional candidacy qualification period, this court enjoined actions which would implement the unprecleared act "in any fashion," including the opening of the candidate qualification period, and Georgia's application to, successively, the three-judge panel, Chief Justice Warren Burger, and Justice William Rehnquist for a stay of the injunction were to no avail. *Busbee v. Smith*, 549 F.Supp. 494, 497 n. 1 (D.D.C.1982), *aff'd on other grounds*, 459 U.S. 1166, 103 S.Ct. 809, 74 L.Ed.2d 1010 (1983). This Court is satisfied, as was the *Busbee* court, that candidate qualification under an as yet uncleared districting plan is "implementation" of a voting change within the meaning of Section 5 of the Voting Rights Act. It turns, therefore, to an examination of the equities as to whether an injunction should issue, and if so, its scope.

Citing the dissent in *Heggins v. City of Dallas*, 469 F.Supp. 739, 745 (N.D.Tex. 1979), South Carolina urges this Court to heed Justice Powell's plea for courts "to bring a measure of common sense to the application of the [Voting Rights] Act ...." *See Berry v. Doles*, 438 U.S. 190, 200–01, 98 S.Ct. 2692, 2697–98, 57 L.Ed.2d 693 (1978) (Powell, J., concurring). The State suggests that an injunction at this stage of the proceedings would needlessly confuse both the candidates and the voters, not to mention upsetting the recently established *status quo*. It proclaims its diligence in both completing its reapportionment plan and promptly seeking preclearance, and it urges its self-perceived strong probability of success on the merits as reasons an injunction should not issue.[8] The

---

**6.** South Carolina also contends that the holding of a primary itself does not constitute implementation of Act 257 and, *a fortiori*, neither does any activity which may occur prior to such a primary. This argument is premised, however, on the State's misplaced reliance on *Charlton County Board of Education v. United States*, 459 F.Supp. 530 (D.D.C.1978). In *Charlton County*, the court refused to enjoin a primary because it ruled it had no personal jurisdiction over the persons legally responsible for conducting the elections, not because it found the holding of a primary not to constitute implementation. The court also considered its "ample equitable discretion" in reaching its decision, noting

that the motion for an injunction was filed in the "eleventh-hour." *Id.* at 533, 536.

**7.** To carry South Carolina's logic only one step further would mean that the primary elections themselves could take place on schedule pursuant to another precleared state statute which provides for party primary elections to be held "on the second Tuesday in June in each general election year," S.C.Code Ann. § 7–13–40 (1976 and Cum.Supp.), notwithstanding the entire redistricting plan of Act 257 remains unapproved.

**8.** The Court will not consider here South Carolina's contention that it is likely to prevail on the

State faults defendants for failing to file their motions until "the eleventh hour" when the filing period was already half-spent, and it calls attention to their failure to show any genuine harm as likely to ensue from either the recent completion of the filing process or a refusal by this Court to vitiate it after the fact, in the light of the State's promise not to proceed all the way to elections if the case remains unresolved.

Defendants, on the other hand, are purporting to represent both the public interest and the private interests of persons the Voting Rights Act was designed to protect. Neither has any other stake in how South Carolina elects its state senators. They point out simply that the Act makes an unprecleared enactment "illegal until and unless this Court declares otherwise," *Busbee v. Smith,* No. 82–0665, Slip op. at 3. By allowing candidates to file under an unprecleared plan, they say, South Carolina is obliging them "to expend considerable time, energy and money campaigning in a district that may never gain approval," in addition to causing "inevitable voter confusion" no matter how the plan fares here. Defendants urge the Court to place the burden of delay on the state, because South Carolina did not even file this lawsuit until December of 1983.

■ Considering the relative culpability of the parties for any delay in assuring the lawfulness of South Carolina's state senatorial elections in 1984, the Court finds that the burden, indeed, falls on the State. *See*

*Perkins v. Matthews,* 400 U.S. at 396, 91 S.Ct. at 440. It knew as early as March, 1981, when it received the 1980 Decennial Census data that it would need to reapportion its senate. The State claims to have shown diligence in enacting new apportionment legislation, especially considering its need to reapportion for both its state house and Congress before the 1982 elections, but the fact remains that South Carolina did not enact Act 257 nor seek preclearance for it until late 1983. Such urgency as the imminence of the current year's elections imparts to the case is due entirely to an elapse of time during which only South Carolina was in a position to prevent it.

■ Although South Carolina asserts that "eleventh hour" applications generally preclude injunctive relief, dilatory motions have had that effect only when they were filed on the eve of primaries or general elections themselves. *See, e.g., Charleton County,* 459 F.Supp. at 536. *See also Wilson v. North Carolina Board of Elections,* 317 F.Supp. 1299 (M.D.N.C.1970).[9]

■ Moreover, the earlier the issuance of an injunction against implementation of an unprecleared plan in the election cycle, the less likely it will be to cause the electors and electoral officials of South Carolina insuperable hardship. The general election is not until November, and the State has already attempted to postpone its senatorial primary election to allow time for candidates to campaign following what it optimistically anticipated would be this

merits, because Section 5 is meant to prevent implementation "without any need for prior adjudication" of actual discrimination. *South Carolina v. Katzenbach,* 383 U.S. 301, 327–28, 86 S.Ct. 803, 818, 15 L.Ed. 769 (1966).

**9.** The Court must also consider the possibility—as yet no more than that—as did the court in *Busbee v. Smith,* No. 82–0665 at 3 n. 1, that the State's strategy might be "to proceed with implementation of ... [the Act] to such an extent that if the Act is not validated, the State can argue that exigent circumstances dictate the use of the plan embodied in the Act for at least the upcoming elections."

South Carolina cannot claim it was surprised by the government's position. It has apparently known from the beginning that commencement of candidate qualification filing would be suspect as implementation of Act 257 in violation of Section 5. In its own Memorandum in Support of its Motion to Expedite Action, filed with the complaint on December 6, 1983, South Carolina urged, as a reason for expedition, that

Act 257 cannot be implemented until such time as it has received preclearance pursuant to § 5 of the Voting Rights Act. Until such time as Act 257 receives preclearance, the only offices for which a prospective candidate may legally file would be those numbered seat, multi-membered, multi-district Senate seats which exist under [its predecessor] which is currently in effect.

The filing which it has since permitted, however, proceeded pursuant to Act 257, not the predecessor.

Court's early and favorable ruling on Act 257 after the June 4th trial. South Carolina has, in the past, shown itself able to prepare for a primary in approximately six weeks, with two weeks for the qualification period and 30 days for the campaign. *See Johnson v. West,* No. 72–680 (D.S.C. June 14 and July 10, 1982) (orders granting injunction and setting election schedule), and there is no reason to think that it could not do so again once Act 257 is precleared. If Act 257 is not precleared following trial, the election process would still not have been irretrievably retarded by an injunction entered now, before much has occurred which would have to be undone and done over.

■ Before issuing an injunction, however, we must examine South Carolina's final contention that defendants have not joined certain indispensable parties pursuant to Fed.R.Civ.P. 19, thereby preventing this Court from enjoining those persons who are actually accepting the candidate filings and making other preparations. The State's statutes, it says, give control of the primaries—including candidate filings therefor—to the political parties who act by their 92 county chairpersons in each of the 46 counties, and none of the chairpersons or either of the parties are presently before the Court.

The United States asserts that by filing this action, South Carolina gave this Court "personal jurisdiction over the party responsible for administering Act 257," relying on *Smith v. Allwright,* 321 U.S. 649, 64 S.Ct. 757, 88 L.Ed. 987 (1944); *Baskin v. Brown,* 174 F.2d 391 (4th Cir.1949); and *Rice v. Elmore,* 165 F.2d 387 (4th Cir.1947), *cert. denied,* 333 U.S. 875, 68 S.Ct. 905, 92 L.Ed. 1151 (1948), to support the proposition. South Carolina correctly points out that none of the cases cited holds that a court may obtain personal jurisdiction over an absent political party by means of its *in personam* jurisdiction over the state, and in each of the cases the political parties

were represented in some more direct fashion.

It is clear, however, that states cannot avoid Section 5 responsibilities by delegating them to political parties. In *Smith v. Allwright,* 321 U.S. at 663, 64 S.Ct. at 764, the Supreme Court said:

> We think that this statutory system for the selection of party nominees for inclusion on the general election ballot makes the party which is required to follow these legislative directions an agency of the State in so far as it determines the participants in a primary election. The party takes its character as a state agency from the duties imposed upon it by state statutes ....

*See also MacGuire v. Amos,* 343 F.Supp. 119, 121 (M.D.Ala.1972); *Wilson v. North Carolina State Board of Elections,* 317 F.Supp. at 1302–03.

This Court concludes that it possesses jurisdiction to enjoin all future action which would implement Act 257 and to invalidate any past implementation, including that effected by candidates' filing qualifications with political party chairpersons, until such time as Act 257 or another plan receives preclearance. The political parties in South Carolina are acting as that state's agents in preparing for the primaries, and, as such, their actions may be controlled by the State.[10] Accordingly, without deciding whether this Court has any personal jurisdiction over its political parties, we will enjoin the State itself from requiring or permitting any action to be taken to implement Act 257 and from recognizing as valid any such action already taken in that regard.

UPON CONSIDERATION of the motions of the United States and the NAACP for an injunction, the opposition thereto, and the oral arguments thereon, it is, therefore, for the reasons set forth above, this 26th day of April, 1984,

ORDERED, that the motions are granted, and the State of South Carolina, its officers, agents, servants, employees, and

---

**10.** The preamble to South Carolina's R. 321 recites, in part, that its "... General Assembly has the responsibility to provide for the orderly conduct of party primaries ...."

attorneys, and all others in active concert or participation with it, are enjoined in accordance with the accompanying Order.

## ORDER

IN ACCORDANCE WITH the Memorandum and Order of even date herewith, the Court having concluded that plaintiff has unlawfully implemented an unprecleared voting change and will continue to do so unless restrained, it is, this 26th day of April, 1984,

ORDERED, ADJUDGED, and DECREED, that the candidate qualification filings heretofore required and permitted by the State of South Carolina between March 16–30, 1984, and the act of its general assembly postponing the state senatorial primary elections from June 12, 1984, to July 24, 1984, are declared null, void, and of no effect, and the State of South Carolina, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with it, are ordered and directed to accord them no legal force and effect until, unless, and except as may hereafter be otherwise determined by this Court; and it is

FURTHER ORDERED, ADJUDGED, and DECREED, that the State of South Carolina, its officers, agents, servants, employees, and attorneys, and all others in active concert or participation with it, shall neither require nor permit any other or further action on their part to be taken in connection with state senatorial elections to be conducted in accordance with Act 257 until Act 257 has been finally precleared pursuant to Section 5 of the Voting Rights Act.