**Ronald CHISOM, et al.,**
**Plaintiffs–Appellees,**

v.

**Buddy ROEMER, et al.,**
**Defendants–Appellants.**

No. 88–3492.

United States Court of Appeals,
Fifth Circuit.

July 26, 1988.

William J. Guste, Jr., Atty. Gen., La. Dept. of Justice, New Orleans, La., Robert G. Pugh, Shreveport, La., M. Truman Woodward, Jr., Moise W. Dennery, Blake G. Arata, Sr. Asst. Atty. Gen., A. R. Christovich, Superintendent Asst. Atty. Gen., New Orleans, for defendants-appellants.

William P. Quigley, Roy Rodney, New Orleans, La., Pamela S. Karlan, Charles Stephen Ralston, Univ. of Virginia, Law School, Charlottesville, Va., Ron Wilson, New Orleans, La., for plaintiffs-appellees.

Mark Gross, U.S. Justice Dept., Appellate Section, Civil Rights Div., Washington, D.C., for amici curiae USA.

Peter J. Butler, New Orleans, La., for amici curiae Marcus.

Charles A. Kronlage, Jr., New Orleans, La., for amici curiae Calogero.

Ira J. Rosenzweig, New Orleans, La., amici curiae Dixon.

Paul D. Kamener, Jackson, Miss., for amici curiae Wash. Legal.

Darleen Jacobs, Brian C. Beckwith, New Orleans, La., for amicus curiae Jacobs.

Before JOHNSON, GARWOOD and JOLLY, Circuit Judges.

BY THE COURT:

IT IS ORDERED that appellants' motion for stay pending appeal is GRANTED to the extent, and it is ORDERED, that the preliminary injunction is hereby stayed insofar only as it may prohibit actions taken or to be taken during or prior to the July 27 through July 29, 1988, qualifying period for the election in question. In all other respects, appellants' request for stay pending appeal is referred to the merits panel without action thereon by this motions panel. Should the merits panel wholly or partially reverse or stay the preliminary injunction, nothing in this order shall prevent the merits panel, should it deem such action on its part to be appropriate, from requiring (or conditioning its stay or reversal on) the State to conduct an additional qualifying period at which additional candidates may qualify for the election in question.

The panel does not have before it the record below. A majority of the panel concludes that if the preliminary injunction is not now stayed insofar only as it relates (if it does) to the qualification period, the scheduled election may be impossible to hold and the issue of the correctness of the preliminary injunction may be in substance mooted, without an opportunity for adequate appellate review. On the other hand, the panel majority is of the view that staying the preliminary injunction as to the qualification period only cannot prejudice the plaintiffs-appellees. There are only two possible alternatives in this connection. If the merits panel affirms, or fails to stay, the preliminary injunction, there will be no

election, and plaintiffs-appellees could not be prejudiced by the preliminary injunction having been stayed as to the qualification period. The only other alternative is that the merits panel will stay or reverse the preliminary injunction, in which event it must be assumed that the merits panel will have correctly determined that the election should go forward as scheduled; in that situation qualification should likewise proceed, as no one has suggested any reason for holding that the election is proper but the qualification procedures are not.

JOHNSON, Circuit Judge, dissenting.

I respectfully dissent from the panel majority's decision to stay that portion of the district court's preliminary injunction as it relates to actions taken or to be taken during or prior to the July 27–29, 1988, qualifying period for the October election of the Louisiana Supreme Court Justice from the First Supreme Judicial District. As found by the district court, there is at this time compelling evidence which indicates that the present electoral scheme for electing the Louisiana Supreme Court Justice from the First District dilutes minority voting strength in violation of Section 2 of the Voting Rights Act of 1965. Based on this evidence, the district court stayed the October election in the First District.

To secure a stay of the district court's order enjoining the October election, the State of Louisiana is required to demonstrate before this Court a likelihood of success on the merits of their appeal of the injunction, irreparable injury in the event a stay is not granted, that the granting of a stay will not significantly harm other parties, and that a stay will serve the public interest. *Fortune v. Molpus,* 431 F.2d 799, 804 (5th Cir.1970). The above prerequisites to a stay of the injunction of the October election apply with equal force to a stay of the injunction as it relates to the July qualifying period. Today, with absolutely *no* evidence before it that the above requirements have been satisfied, the panel majority negates that portion of the district court's stay as it relates to the qualification period for the October election. Because of the prejudice resulting from the panel

majority's action to minority plaintiffs, to potential candidates for the October election and to the entire voter population, I disagree with the panel majority's decision.

Initially, it should be noted that in the language of the Supreme Court "a filing period cannot be considered in isolation from the election of which it forms a part." *NAACP v. Hampton County Election Commission,* 470 U.S. 166, 177, 105 S.Ct. 1128, 1134–35, 84 L.Ed.2d 124 (1985). *See also South Carolina v. United States,* 585 F.Supp. 418 (D.D.C.1984) (candidate filing period was enjoined where it was unclear whether the election would be conducted pending preclearance of election procedures under Section 5 of the Voting Rights Act). In the instant case, the qualifying period and the October 1988 election itself are inextricably intertwined since potential candidates necessarily decide whether to seek elected office and whether to satisfy qualifying requirements based on their perception of their likelihood of success in the election. *See Hampton,* 470 U.S. at 177, 105 S.Ct. at 1134–1135 ("Potential candidates who considered the opening of the filing period illegal" because of objection to propriety of electoral scheme "may have deliberately stayed away."); *McMillan v. Escambia County,* 748 F.2d 1037, 1045 (5th Cir.1984) (The lack of black candidates for elected offices chosen pursuant to at-large electoral system is a "likely result of a racially discriminatory system."). It appears that there are now only two viable candidates for the position on the Louisiana Supreme Court which is to be filled by the October 1988 election. Both of these candidates are white. In this regard, the district court specifically found that "no potential candidate with a broad base of support from the Orleans Parish black voting community is presently intending to run for the upcoming election because of a perception of doomed defeat." Most assuredly, an implicit finding within the district court's injunction of the election itself is a finding that the reason these potential candidates are deterred is a perception of minority voter dilution—a perception now reinforced and solidified by the

district court's prima facie finding that the plaintiffs are likely to succeed on the merits of their voter dilution claim. Indeed, the State of Louisiana presented virtually no evidence to challenge, either legally or factually, the district court's conclusion that plaintiffs are likely to prevail on their Section 2 claim.

The majority of this panel has seen fit to set aside the injunction issued by the district court and to permit the qualifying period in July to proceed. The qualifying period begins tomorrow, July 27, 1988, and ends July 29, 1988. Should this Court later overturn the district court's stay of the October election, it is relatively certain that only two candidates will be found to have previously qualified (during the July 27–29, 1988, period) for the election in October. Both of these will be white. The resulting prejudice to the minority plaintiffs is that blacks will have once again been deprived of the opportunity to meaningfully participate in the election of a Louisiana Supreme Court Justice in the First District because blacks were previously deterred (up to and through July 27–29, 1988) from seeking to qualify for the election in that district due to the perception of doomed defeat resulting from the present electoral scheme. As the Supreme Court has stated:

> The interests involved are not merely those of parties or individual candidates; the voters can assert their preferences only through candidates or parties or both and it is this broad interest that must be weighed in the balance. *The right of a party* or an individual *to a place on a ballot* is entitled to protection and is intertwined with the rights of voters.

*Lubin v. Parish,* 415 U.S. 709, 716, 94 S.Ct. 1315, 1320, 39 L.Ed.2d 702 (1974) (emphasis added).

It is grossly unfair and prejudicial to all potential candidates for the October election to permit the qualification process to proceed at this time when in fact the October election may never occur. As noted by a potential candidate [1] for the October election in an amicus curiae brief to this Court, it is particularly unfair to expect candidates to expend the large sums of money and energy necessary to effectively campaign for a position on the Louisiana Supreme Court in an atmosphere imbued with confusion and uncertainty among the voters created by the knowledge that the October election is currently enjoined.

Finally, it should be noted that the Attorney General of the United States, as amicus curiae [2] in the instant case, maintains that the district court's injunction of the October election should not be partially stayed (as to the qualification period) by this panel. In this regard, the Attorney General notes that "since the ultimate disposition of the claims will, in all likelihood, not be in appellants' [the State's] favor, the partial stay would require candidates in effect to begin campaigns twice, thus unfairly depleting their resources."

In sum, compelling evidence demonstrates that minority plaintiffs, that potential candidates for the October election, and that the entire voter population will be severely prejudiced by the panel majority's negating the district court's injunction and authorizing the qualification process in July to proceed for what appears to be only two white candidates. It should be noted that the panel majority's order makes it certain that the majority's action was taken blindly without the "record below." Nevertheless, without that record, the panel majority attempts to suggest that, having negated the district court's injunction as to the qualification period, there are only two possible alternatives, neither of which have any possible negative impact on prospective minority candidates for the position in question. In truth the negative impact is made certain—is totally assured by the panel majority's action: it is beyond question that no one may be *elected* to this

---

1. The potential candidate, Darleen Jacobs, describes herself thusly, "Mover is not a plaintiff in this cause, nor is a member of plaintiff's class."

2. It is noted that the Government's amicus brief recites, "The United States has prepared the papers for and intends to file a motion to intervene *as a plaintiff* in the district court in the coming week." (emphasis added).

office without having first *qualified* for the office; yet today's action by the panel majority limits and circumscribes those who may qualify. That defined and limited class is completely devoid of individuals of the group (minority candidates) sought to be protected by the issuance of the district court's injunction; indeed, is totally devoid of those sought to be protected by the Voting Rights Act itself.

Accordingly, I dissent from the majority's action in lifting the district court's stay as it relates to the qualifying period for the October election.