**PUERTO RICAN LEGAL DEFENSE AND EDUCATION FUND, INC., Mauricio Hernandez, Nilka I. Alvarez, and Jose A. Diaz, Plaintiffs,**

v.

**CITY OF NEW YORK, New York City Districting Commission, and New York City Board of Elections, Defendants.**

No. CV–91–2026.

United States District Court,
E.D. New York.

June 12, 1991.

Arthur A. Baer, Ruben Franco, Kenneth Kimerling, Puerto Rican Legal Defense and Educ. Fund, Inc., New York City, for plaintiffs.

Joel Berger, Asst. Corp. Counsel, New York City, for defendants.

MEMORANDUM AND ORDER

GLASSER, District Judge:

By order to show cause, plaintiffs seek a temporary restraining order barring defendants from proceeding with the current timetable for candidate petitioning for qual-

ification for the party primary ballots for the New York City Council election until such time as the United States Department of Justice or a three-judge court of the United States District Court for the District of Columbia has approved the proposed districting plan pursuant to 42 U.S.C. § 1973c.

### FACTS

The facts leading up to this request are as follows: In 1989 the voters of the City of New York approved a new City Charter which provided for significant changes in the structure of the city government. Those changes included the abolition of the city's Board of Estimate and the expansion of both the size and the power of the City Council, which grew from 35 to 51 seats. The new Charter created a Districting Commission whose job it was to redraw the city council district lines to create 51 new districts. The combined requirements of local, state, and federal laws as they pertain to this task and to the election process have led to the dispute now before the court. First, the Charter provided that the next City Council election would be held in November 1991, rather than November 1993 when the normal 4–year election cycle would have required it. Second, because state law requires that the circulation of nominating petitions for the party primaries begin on June 17, 1991, a date changed by Chapter 90 of the Laws of 1991 from June 4, 1991,[1] the new City Charter required the drawing of the new districts to be completed by June 7, 1991. Third, the Districting Commission was required by the Charter to utilize the data collected in the 1990 national census, not due to be reported until April 1, 1991, in redrawing the district lines. Fourth, as will be set forth in more detail below, § 5 of the federal Voting Rights Act of 1965, 42 U.S.C. § 1973c, requires approval, or "preclearance," of the redistricting plan by either the Attorney General or by a three-judge court of the United States District Court for the District of Columbia. The Attorney

General may consider a plan submitted to it for 60 days, and may before the end of that period request additional information and take an additional 60 days before announcing its objection to the plan. No plan within the scope of § 5 may be implemented prior to approval. It was thus apparent that the federal preclearance period would almost certainly overlap with initial stages of the 1991 election process, including, at the least, the candidate petitioning process prerequisite to the party primaries.

Both Chapter 90's scheduling changes and the new City Council districting map have been submitted to the Attorney General for preclearance, which, as of this date, has not been obtained. Although it is highly unlikely that preclearance of the new district lines will issue before June 17, the city has made clear its intention to go forward with the commencement of the petitioning process, nevertheless. Plaintiffs, relying on § 5 of the Voting Rights Act, seek to enjoin the city's commencement of that process by temporary restraining order until a three-judge court can be convened to hear their application for a preliminary injunction.

### DISCUSSION

■ Preliminarily, the parties agree that the permanent injunction sought by plaintiffs pending preclearance may only be granted by a three-judge district court. 42 U.S.C. § 1973c ("Any action under this section shall be heard and determined by a court of three judges in accordance with the provisions of § 2284 of title 28 of the United States Code and any appeal shall lie to the Supreme Court."); *Allen v. State Board of Elections,* 393 U.S. 544, 560–63, 89 S.Ct. 817, 828–31, 22 L.Ed.2d 1 (1969) ("We conclude that in light of the extraordinary nature of the Act in general, and the unique approval requirements of § 5, Congress intended that disputes involving coverage of § 5 be determined by a district court of three judges."); 28 U.S.C. § 2284(b)(3). A temporary restraining or-

---

1. The date for filing of completed petitions was also changed from July 11 to July 22. *See*

N.Y.Elec.Law §§ 6–134(6), 6–158, 6–100.

der, however, may issue from a single district judge, as 28 U.S.C. § 2284 provides:

(b) In any action required to be heard and determined by a district court of three judges under subsection (a) of this section, the composition and procedure of the court shall be as follows:

\* \* \* \* \* \*

(3) A single judge may conduct all proceedings except the trial, and enter all orders permitted by the rules of civil procedure, except as provided in this subsection. He may grant a temporary restraining order on a specific finding, based on evidence submitted, that specified irreparable harm will result if the order is not granted, which order, unless previously revoked by the district judge, shall remain in force only until the hearing and determination by the district court of three judges .of an application for a preliminary injunction.

The parties thus agree that this application is properly before this court.

Determination of the issue before me must of necessity be predicated on 42 U.S.C. § 1973c, more commonly known as § 5 of the Voting Rights Act of 1965. That statute in essence

prohibits any state or political subdivision subject to § 5 of the Act from enforcing any change in voting qualifications, prerequisites, practices, procedures or standards with respect to voting unless it has either (1) obtained a declaratory judgment from the United States District Court for the District of Columbia that the change "does not have the purpose and will not have the effect of denying or abridging the right to vote on account of race[,] color, or [membership in a language minority]," or (2) submitted the proposed change to the Attorney General of the United States "and the Attorney General has not interposed

an objection within sixty days after such submission, or upon good cause shown, to facilitate an expedited approval within sixty days after such submission, the Attorney General has not affirmatively indicated that such objection will not be made." 42 U.S.C. § 1973c.

*Herron v. Koch,* 523 F.Supp. 167, 169 (E.D.N.Y.1981) (3–judge court). The "inquiry of a local district court in a § 5 action against a State or political subdivision is 'limited to the determination whether "a [voting] requirement is covered by § 5 but has not been subjected to the required federal scrutiny." ' " *United States v. Board of Supervisors of Warren Co., Mississippi,* 429 U.S. 642, 645–46, 97 S.Ct. 833, 834–35, 51 L.Ed.2d 106 (1977). If § 5 is applicable and has not been satisfied, it remains to decide the appropriate relief.

The parties do not dispute that by redrawing the district lines the city implicates § 5 of the Voting Rights Act. The Supreme Court has consistently held that "the Act be given 'the broadest possible scope' to reach 'any state enactment which altered the election law of a covered State in even a minor way.' " *Perkins v. Matthews,* 400 U.S. 379, 387, 91 S.Ct. 431, 436, 27 L.Ed.2d 476 (1971). The first question before this court, then, is whether petitioning for candidate qualification under an as yet unprecleared districting plan is "implementation" of a voting change within the meaning of § 5 of the Voting Rights Act. That question has been answered affirmatively in *State of South Carolina v. United States,* 585 F.Supp. 418 (D.D.C.1984) (3–judge court). In that case, the South Carolina legislature approved a reapportionment plan, "Act 257," that established new districts for the election of state senators. During the pendency of the preclearance proceeding before a three-judge panel of the District Court for the District of Columbia,[2] the state began the candidate

---

**2.** It might here be noted that, contrary to the contention of defendants' counsel, the plan at issue before the three-judge court of the District Court for the District of Columbia in *South Carolina* had *not* been disapproved by the Attorney General before plaintiffs sought approval from the three-judge court. Rather, the state opted, "as it is entitled to do, [for judicial approval] rather than first asking for preclearance from the Attorney General." *State of South Carolina v. United States,* 585 F.Supp. at 419 n. 1. The Attorney General did, however, express objections in his submissions to the district court, and did refuse to preclear legislation establishing a time-table which started the candi-

qualification process "requiring political parties holding primaries to accept candidacy notices for the state senate, the electoral districts in which the candidates will stand for election being defined by Act 257's redistricting plan." *Id.* at 420. The United States and defendant-intervenors NAACP sought an injunction barring South Carolina from "implementing" the new redistricting plan of Act 257 until the district court granted preclearance. They contended that South Carolina could not, absent preclearance, conduct *any* activities in preparation for the senate primaries without violating the Voting Rights Act. *Id.* at 421. South Carolina asserted that "mere candidate filing for party primaries does not constitute implementation" of its state senate reapportionment plan. *Id.* at 422. Rather, it said, the activity implemented, if anything, the state law which provided that each prospective candidate for state or local office wishing to be placed on the primary ballot must file a "notice of candidacy and pledge with county political party chairpersons by March 30 of a general election year." *Id.*

The issue presented was framed as follows:

> Thus, this Court must determine whether candidate qualification filing and certain other steps being taken … *in preparation for* the primary elections constitute "implementation" of an unprecleared voting change.

*Id.* at 421. The Court responded:

> South Carolina's thesis … is specious.... It is obvious that South Carolina is implementing the unprecleared Act 257 through candidate filing procedures, as well as any other activities it plans in anticipation of the senatorial primary.

> \* \* \* \* \* \*

This Court is satisfied … that candidate qualification under an as yet uncleared districting plan is "implementation" of a

date filing process prior to the preclearance by

voting change within the meaning of Section 5 of the Voting Rights Act.

*Id.* at 422.

Notwithstanding this explicit language from *South Carolina,* defendants reject as inapposite the holding in that case that commencement of the candidate qualification process constitutes implementation of the new redistricting plan. They rely entirely on *Herron v. Koch, supra.* In that case, like the one at bar, local legislation increased the number of seats on the City Council, and the city attempted to proceed with pre-election activities before preclearance was received. Although the *Herron* opinion defendants rely on was the decision of a three-judge court, plaintiffs had earlier unsuccessfully sought preliminary injunctions from a single-judge court. The injunctions were denied as "premature." Exactly what activities were sought to be enjoined cannot be gleaned from the opinion, but at least one injunction appears likely to have been sought after the completion of the candidate qualification process. *Id.* at 172 (injunction sought on August 31, 1981; primary election scheduled for September 10, 1981). Defendants' counsel quotes the three-judge court for its partial statement: "Herron's earlier motion was premature, and we agree that an injunction was properly denied on that basis," *Herron v. Koch,* 523 F.Supp. at 175, arguing that the instant application must be premature as well. However, that that court expressed no clear opinion on the single-judge's decision is apparent from the passage when read in context:

> If Herron's earlier motion was premature, and we agree that an injunction was properly denied on that basis, and the present motion is to be denied on the ground that in the interval energies and monies have been expended that would make an injunction work hardship on the City and the candidates, *we are at a loss to guess at what time the voters could sensibly hope to enjoin a City, that has*

the district court. *Id.* at 420.

*not complied with § 5, from enforcing its changes.*

*Id.* at 175 (emphasis added).

The validity of the defendants' insistence even in the light of *State of South Carolina v. United States* that the candidate qualification process is not a change contemplated by § 5 of the Voting Rights Act is also clearly discredited by the observations of the Court in *NAACP v. Hampton County Election Comm'n*, 470 U.S. 166, 176–77, 105 S.Ct. 1128, 1134–35, 84 L.Ed.2d 124 (1985) as follows:

> We have twice held that the rescheduling of a candidate qualifying period is a "change" that comes within the scope of § 5.... [A] filing period cannot be considered in isolation from the election of which it forms a part. As we have recognized in an analogous context, issues that provoke responses from the electorate and from potential candidates are most likely to arise shortly before election time.... Potential candidates who considered the opening of the filing period illegal ... may have deliberately stayed away.

* * * * * *

Among the specific examples of changes listed in the regulations to the Voting Rights Act is "[a]ny change affecting the eligibility of persons to become or remain candidates." [28 CFR] § 51.12. Pursuant to these regulations, the Attorney General has, since 1980, reviewed approximately 58 changes in election dates and approximately 10 changes in dates for candidate filing periods. In none of these instances did the Attorney General advise the covered jurisdiction that its submission was not a "change," and on several occasions objections were interposed.

Defendants do not dispute that the redistricting plan approved and submitted by the Districting Commission represents a change within the meaning of § 5 of the Voting Rights Act. Nor do defendants dispute that preclearance required by that statute has not been obtained. They argue essentially that the Voting Rights Act would not have been intended to apply to the primary petitioning process, which, they would urge, should be permitted to go forward despite the possibility that the process would be for naught if preclearance of the redistricting plan were to be subsequently denied. That the primary petitioning process is embraced by the Voting Rights Act has been explicitly addressed in *State of South Carolina v. United States, supra.* The implication of their contention that if preclearance were denied a new primary petitioning process can be ordered is not appealing. At issue here is not "the *ex post* question whether to set aside illegal elections"; rather, the issue here is the *ex ante* question whether to allow the unprecleared election implementation process to go forward at all. "On these premises, § 5's prohibition against implementation of unprecleared changes" requires this court to grant the relief plaintiffs seek. *Clark v. Roemer,* —— U.S. ——, ——, 111 S.Ct. 2096, 2102, 114 L.Ed.2d 691 (1991). To the extent that the defendants may now find themselves in a dilemma it is largely of their own making. *See NAACP v. Hampton County Election Comm'n*, 470 U.S. at 180, 105 S.Ct. at 1136.

The traditional prerequisites for the granting of a preliminary injunction or a temporary restraining order have been set forth on countless occasions in this circuit as being a showing by the plaintiff of (a) irreparable harm and (b) either (1) likelihood of success on the merits or (2) sufficiently serious questions going to the merits to make them a fair ground for litigation and a balance of hardships tipping decidedly in favor of the movant. *Jackson Dairy, Inc. v. H.P. Hood & Sons*, 596 F.2d 70, 72 (2d Cir.1979). A fair reading of the cases in which § 5 of the Voting Rights Act was the basis for injunctive relief justifies the conclusion that the traditional requirements for relief are not applicable. For example, in *Herron v. Koch, supra,* upon which the defendants place principal reliance, there is no discussion of those prerequisites. The court there simply said:

> We must decide only (1) whether the change is covered by § 5, (2) if the

change is covered whether the § 5 requirements were satisfied, and (3) if the requirements were not satisfied, what remedy is appropriate.

*Herron v. Koch*, 523 F.Supp. at 172. In *Clark v. Roemer*, —— U.S. at ——, 111 S.Ct. at 2101, the Supreme Court wrote:

> Section 5 requires States to obtain either judicial or administrative preclearance before implementing a voting change.... If voting changes subject to § 5 have not been precleared, § 5 plaintiffs are entitled to an injunction prohibiting the State from implementing the changes. *Allen v. State Bd. of Elections*, 393 U.S. 544, 572 [89 S.Ct. 817, 835, 22 L.Ed.2d 1] (1969).

*See also* Rule 65(e), Fed.R.Civ.P., which provides, in substance, that Rule 65 does not modify any statute of the United States relating to temporary restraining orders and preliminary injunctions in actions affecting Title 28, U.S.C., § 2284, relating to actions required to be heard and determined by a district court of three judges; *Harris v. Graddick*, 593 F.Supp. 128, 135 (M.D.Ala.1984).

Although that conclusion may be correct as it pertains to *injunctions*, 28 U.S.C. § 2284(b)(3) provides that a *temporary restraining order* may be granted on a specific finding that specified irreparable damage will result if the order is not granted. If, in addition, the requirement of likelihood of success on the merits were to be required, the plaintiff has clearly satisfied that requirement. In this regard, the inquiry is not to determine whether the proposed districting changes are likely to be cleared as required by statute. The inquiry simply is whether the implementation of the redistricting change is covered by § 5 and has not been subjected to the required federal preclearance. As to irreparable harm, it is well-settled that the claimed deprivation of a constitutional right such as the right to a meaningful vote or to the full and effective participation in the political process is in and of itself irreparable harm. *Reynolds v. Sims*, 377 U.S. 533, 562, 565, 84 S.Ct. 1362, 1381, 1383, 12 L.Ed.2d 506 (1964); *Dillard v. Crenshaw County*, 640 F.Supp. 1347, 1363 (M.D.Ala.1986); *Harris v. Graddick*, 593 F.Supp. at 135 (The Voting Rights Act "and its history reflect a strong national mandate for the immediate removal of all impediments, intended or not, to equal participation in the election process. Thus when [the Voting Rights Act] is violated the public as a whole suffers irreparable injury."); C. Wright & A. Miller, *Federal Practice and Procedure* § 2948, at 440 (1973).

■ The defendants' contention that relief should be denied because the plaintiffs delayed too long in seeking it is unpersuasive. "Congress expressly indicated its intention that the States and subdivisions, rather than citizens seeking to exercise their rights, bear the burden of delays in litigation." *Perkins v. Matthews*, 400 U.S. at 396, 91 S.Ct. at 441. In any event, "dilatory motions have had [the effect of precluding injunctive relief] only when they were filed on the eve of primaries or general elections themselves." *State of South Carolina v. United States*, 585 F.Supp. at 423. That is clearly not the case here.

Based on the foregoing, plaintiffs' motion for a temporary restraining order is granted in accordance with their request as follows: Defendants are hereby enjoined from commencing and implementing the petitioning process for qualification for the party primary ballots for election to the New York City Council now scheduled to commence on June 17, 1991 until a three-judge court constituted in accordance with 28 U.S.C. § 2284 hears and determines plaintiffs' motion for a preliminary injunction. The requirement that security be given incident to the granting of a temporary restraining order is not applicable. *See* Rule 65(e), Fed.R.Civ.P.

SO ORDERED.