6 F.3d 867
 62 USLW 2179, 146 P.U.R.4th 615
 AMSAT CABLE LTD., A Connecticut Partnership and Stamford
Apartments Co., A Connecticut Partnership,
Plaintiffs-Appellants,
v.
CABLEVISION OF CONNECTICUT LIMITED PARTNERSHIP; Peter G.
Boucher, Commissioner Department of Public Control State of
Connecticut; Otto C. Neumann, Commissioner Department of
Public Utility Control; Richard G. Patterson and Clarice
Nardi Riddle, Attorney General of the State of Connecticut,
Defendants-Appellees,
Office of Consumer Counsel, Intervenor-Defendant-Appellee.
 No. 1032, Docket 92-9162.
 United States Court of Appeals,
Second Circuit.
 Argued March 19, 1993.
Decided Sept. 10, 1993.
 
 W. James MacNaughton, Woodbridge, NJ, for plaintiffs-appellants.
 Allan B. Taylor, Day, Berry & Howard, Hartford, CT, for defendant-appellant Cablevision of Connecticut Ltd. Partnership.
 Tatiana D. Sypko, Asst. Atty. Gen. of Connecticut, New Britain, CT (Richard Blumenthal, Atty. Gen. of Connecticut, Robert S. Golden, Jr., Asst. Atty. Gen. of Connecticut, of counsel), for defendants-appellants Peter G. Boucher, Otto C. Neumann, Richard G. Patterson, and Clarice Nardi Riddle.
 Valerie J. Bryan, Office of Consumer Counsel, New Britain, CT, for intervenor-appellee Office of Consumer Counsel.
 Renee Licht, Acting General Counsel, F.C.C., Washington, DC (Daniel M. Armstrong, Associate General Counsel, Sara F. Seidman, Sp. Asst., of counsel) submitted a brief amicus curiae on behalf of F.C.C.
 John L. Grow, Counsel, New York State Com'n on Cable Television, Albany, NY (Jaclyn A. Brilling, Deputy Counsel, of counsel) filed a brief amicus curiae on behalf of New York State Com'n on Cable Television.
 Martin J. Schwartz, New York City (Richard G. Primoff, Rubin Baum Levin, Constant & Friedman, of counsel) submitted a brief amicus curiae on behalf of Time Warner Cable of New York City.
 John D. Pellegrin, Washington, DC, submitted a brief amicus curiae on behalf of Commander Satellite Corp.
 Before: ALTIMARI and WALKER, Circuit Judges, and LASKER, District Judge.*
 WALKER, Circuit Judge:
 
 
 1
 This case involves, inter alia, a constitutional challenge to the application of Connecticut's mandatory cable access law, Conn.Gen.Stat. Sec. 16-333a, a statute that guarantees franchised cable television companies access to apartment complexes currently exclusively serviced by satellite master antenna television ("SMATV") companies on the request of complex residents.
 
 BACKGROUND
 
 2
 Under the terms of Sec. 16-333a, which is similar in certain respects to cable access statutes enacted in New York and other states, see, e.g., Ill.Rev.Stat. ch. 65 ILCS 5/11-42-11.1; N.J.S.A. Sec. 48:5A-49; N.Y.Exec.L. Sec. 828, an apartment complex owner may not deny its residents access to the services of community antenna television service providers. The statutory definition of community antenna television service providers includes, inter alia, franchised cable television broadcasters. See Conn.Gen.Stat. Secs. 16-1(a)(14)-(15). Plaintiffs-appellants contend, and the other parties do not dispute, that Sec. 16-333a does not grant SMATV companies the same right of access. Section 16-333a provides in relevant part:
 
 
 3
 (b) An owner of a multiunit residential building shall permit wiring to provide community antenna television service in such building provided that: (1) A tenant of such building requests community antenna television services; (2) the entire cost of such wiring is assumed by the community antenna television company; (3) the community antenna television company indemnifies and holds harmless the owner for any damages caused by such wiring; and (4) the community antenna television company complies with all rules and regulations of the department of public utility control pertaining to such wiring.
 
 
 4
 Section 16-333a also provides a procedure for compensating property owners whose property is taken as a result of cable installations. See id. at Secs. 16-333a(e)-(h).
 
 
 5
 Plaintiffs-appellants are an SMATV company, AMSAT Cable Ltd., and an apartment complex owner, Stamford Apartments Co. Defendants-appellees are the holder of a cable television franchise in Connecticut, Cablevision of Connecticut Limited Partnership, various Connecticut state officials, and intervenor Connecticut Office of Consumer Counsel.
 
 
 6
 AMSAT operates SMATV systems in a number of apartment complexes, including one owned by Stamford Apartments, known as Hoyt-Bedford. SMATV systems are composed of satellite reception dishes installed in private apartment complexes providing television services to residents via cable lines. Under an agreement between AMSAT and Stamford Apartments, AMSAT received an exclusive easement for the installation of an SMATV system in Hoyt-Bedford, and an exclusive right to provide cable television service to the residents thereof. In an administrative ruling (the "Summitwood " decision), the Connecticut Department of Public Utility Control ("DPUC") declared the exclusivity provisions of a similar agreement between AMSAT and the owner of another apartment complex void and unenforceable pursuant to Sec. 16-333a, after which point AMSAT discontinued its service to the complex. A state court appeal of the Summitwood decision was dismissed as moot.
 
 
 7
 Plaintiffs contend that Cablevision has threatened to demand access to Hoyt-Bedford pursuant to the DPUC's construction of Sec. 16-333a. Plaintiffs brought suit in the United States District Court for the District of Connecticut (Daly, J.) under 42 U.S.C. Secs. 1983 and 1988 seeking, inter alia, a declaration that Sec. 16-333a is unconstitutional, and an injunction against enforcement of Sec. 16-333a to void the AMSAT-Stamford Apartments exclusivity agreement.
 
 
 8
 Plaintiffs make three primary claims: first, that Sec. 16-333a gives rise to violations of their constitutional free speech rights (count one); second, that Sec. 16-333a violates the constitutional protection against governmental taking of property without just compensation (count three); and, third, that Sec. 16-333a, as construed by the DPUC in the Summitwood decision, is preempted by the Federal Communications Act of 1934, 47 U.S.C. Sec. 151 et seq. (the "Communications Act"), as interpreted by the Federal Communications Commission ("FCC") (counts two and four), and the Cable Communications Policy Act of 1984, 47 U.S.C. Sec. 521 et seq. (the "Cable Act") (count six).
 
 
 9
 The district court adopted the recommended ruling of Magistrate Judge Margolis, and granted defendants' summary judgment motion and dismissed the complaint. For the reasons set forth below, we affirm the district court's judgment.
 
 DISCUSSION
 I. First Amendment Claims
 
 10
 For purposes of this discussion, we distinguish between the constitutional claims of service-provider AMSAT and those of property-owner Stamford Apartments.
 
 A. AMSAT
 
 11
 AMSAT advances two speech-related theories. First, AMSAT contends that the First Amendment, as applicable to the states through the Fourteenth Amendment, gives it a right to exclude Cablevision from Hoyt-Bedford. Second, AMSAT argues that Sec. 16-333a favors franchised cable broadcasters over SMATV operators in a manner that burdens its free-speech rights, violating the Equal Protection Clause of the Fourteenth Amendment.
 
 1. Right of Exclusion
 
 12
 AMSAT contends that the First Amendment protects it against enforcement of Sec. 16-333a to provide cable competitors like Cablevision with access to apartment complexes to which SMATV operators like AMSAT currently have exclusive access. AMSAT's theory is based on the assertion that its operations would not remain economically viable, and therefore its speech would be silenced, were it placed in direct competition with franchised cable service providers.
 
 
 13
 AMSAT proceeds on the erroneous premise that it has a constitutional right not only to speak, but to speak profitably. The First Amendment protects a cable operator's right to make certain programming decisions and to disseminate its speech, as well as its viewers' rights to receive the speech. See, e.g., Leathers v. Medlock, 499 U.S. 439, 444-45, 111 S.Ct. 1438, 1442, 113 L.Ed.2d 494 (1991) (noting that cable television operators engage in First Amendment protected speech). But "the first amendment does not guarantee that someone will listen to [AMSAT's] speech, nor pay to listen." Warner Cable Communications, Inc. v. City of Niceville, 911 F.2d 634, 638 (11th Cir.1990), cert. denied, --- U.S. ----, 111 S.Ct. 2839, 115 L.Ed.2d 1007 (1991). Ending AMSAT's monopoly control over cable service in buildings it now serves may drive AMSAT out of business. But this does not give rise to a First Amendment claim.
 
 
 14
 The result in this case follows a fortiori from the Eleventh Circuit's recent well-reasoned decision in Niceville. In that case, the defendant city chose to go into the cable business, providing service in direct competition with plaintiff Warner, a private franchised cable provider. As in the case at bar, the entry of the new competitor into the marketplace did not impose any direct impediments upon prior-service-provider Warner's ability to continue its operations. However, Warner contended that the city's establishment of a competing cable system would have the effect of either greatly diminishing Warner's business or driving it entirely out of business. Therefore, Warner reasoned, the city was engaging in an abridgment of speech. See id. at 636-37.
 
 
 15
 The court rejected Warner's argument, stating that "[t]he assertion that the City's plan 'abridges Warner's right to speak' ... is simply inaccurate." Id. at 637. Rather,
 
 
 16
 What the City's ordinance does abridge is the continuation of Warner's profitable position as the only speaker in a captive cable market. A City-owned cable system, if successful, will no doubt reduce the audience for Warner's speech and diminish the profitability of that speech. Such economic loss, however, does not constitute a first amendment injury. "The inquiry for First Amendment purposes is not concerned with economic impact; rather, it looks only to the effect of this ordinance upon freedom of expression."
 
 
 17
 Id. at 638 (quoting Young v. American Mini Theaters, Inc., 427 U.S. 50, 78, 96 S.Ct. 2440, 2456, 49 L.Ed.2d 310 (1976) (Powell, J., concurring)) (emphasis in original); see also P.A.M. News Corp. v. Butz, 514 F.2d 272, 278 (D.C.Cir.1975) (First Amendment rights of wire service disseminating agricultural information not infringed by Department of Agriculture's decision to disseminate such information directly); National Market Reports, Inc. v. Brown, 443 F.Supp. 1301, 1304 (S.D.W.Va.1978) (state law requiring insurance companies to use particular guide book in determining the value of cars when settling claims did not infringe upon First Amendment rights of publisher of competing guide book).
 
 
 18
 AMSAT focuses upon the Niceville court's speculation that there might be some First Amendment limitations upon the ability of government sponsored speakers to compete with private media speakers. The Eleventh Circuit stated, in dictum, that, while the Constitution does not bar the government from participating as a speaker in the broadcasting marketplace, "the government may not speak so loudly as to make it impossible for other speakers to be heard by their audience." 911 F.2d at 638. Even assuming that Cablevision is a government sponsored speaker, the Eleventh Circuit's dictum is unhelpful to AMSAT. The Niceville court was merely noting that the government may not engage in speech suppression through its own speech. No such suppression has occurred--or is likely to occur--here. Moreover, the Niceville dictum apparently focused upon government speech in public forums to which private speakers have a constitutional right of access; the private apartment complex at issue here is not a public forum. Section 16-333a gives certain broadcasters a statutory right to provide their services to apartment residents who wish to have those services, and subjects portions of landlords' properties to condemnation for that purpose. However, taking property for this governmental purpose does not thereby transform the apartment buildings at issue into public forums. Cf. Perry Educ. Ass'n v. Perry Local Educators' Ass'n, 460 U.S. 37, 103 S.Ct. 948, 74 L.Ed.2d 794 (1983) (permitting inter-school communications by union through school mail systems did not thereby make mail systems public forums). Moreover, classification of Hoyt-Bedford as a public forum would not advance AMSAT's claimed First Amendment right of exclusion. Indeed, were such properties public forums, in addition to their statutory right, Cablevision and other cable operators might well have a constitutional right of access to Hoyt-Bedford as well.
 
 2. Equal Protection
 
 19
 AMSAT further contends that its complaint asserts a Fourteenth Amendment equal protection claim which went unaddressed by the court below. AMSAT argues that Sec. 16-333a unconstitutionally favors franchised cable operators like Cablevision in a manner burdening its free speech rights by guaranteeing franchised cable operators access to the homes of viewers who want their services, while not guaranteeing such access to AMSAT.
 
 
 20
 We do not reach the merits of AMSAT's equal protection claim because it is not justiciable. Unlike AMSAT's first amendment claim which concerns Hoyt-Bedford itself, AMSAT's equal protection claim attempts to challenge the abstract, and as yet unknown, effect of Sec. 16-333a on AMSAT's ability to gain access to other apartment complexes. We hold that the claim lacks ripeness and that AMSAT lacks standing to assert the claim.
 
 
 21
 Ripeness doctrine reflects the principle that "courts should decide only 'a real, substantial controversy,' not a mere hypothetical question." 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure Sec. 3532.2, at 137 (2d ed. 1984). Courts will find a case to lack ripeness when it "involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." Id. at 141; see also Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 3332-33, 87 L.Ed.2d 409 (1985) (The ripeness doctrine's basic rationale " 'is to prevent the courts, through premature adjudication, from entangling themselves in abstract disagreements.' ") (quoting Abbott Labs. v. Gardner, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977)). In determining whether a matter is ripe for decision, we look, first, to whether the issue is fit for review and, second, to the hardship to the parties of withholding review. See Abbott Labs, 387 U.S. at 149, 87 S.Ct. at 1515; In re Drexel Burnham Lambert Group Inc., 995 F.2d 1138, 1146 (2d Cir.1993).
 
 
 22
 We consider first whether AMSAT's equal protection claim is unfit for review. AMSAT's claim is based on the presupposition that it will not be able to obtain access to additional buildings it wishes to service because it has not received the right of access accorded franchised cable operators. However, there is no admissible evidence in the record tending to prove that AMSAT has been denied access to any buildings it sought to service. In an affidavit submitted to the district court after Magistrate Judge Margolis made her suggested findings of fact and conclusions of law, AMSAT's president claims that one apartment owner informed him that he was uninterested in obtaining AMSAT's service because he was required to permit a franchised cable operator to provide service to its residents. This hearsay statement apparently was not supported by an affidavit from the apartment owner.
 
 
 23
 Moreover, AMSAT has not affirmatively stated that it will seek to provide service in the future to any complex that is or could be serviced by franchised cable. In fact, AMSAT has already withdrawn from at least one complex in which it was placed in direct competition with a franchised cable operator. And AMSAT's primary constitutional claim is premised on the notion that AMSAT cannot survive economically in direct competition with franchised cable operators. There is thus good reason to believe that AMSAT will not attempt to service new facilities, whether or not it has a right of access, so long as franchised cable operators have a right to enter those facilities.
 
 
 24
 Given that the possibility that AMSAT's putative equal protection rights will ever be meaningfully compromised is quite remote, any constitutional claim based upon the discriminatory denial to AMSAT of a right of access is not fit for decision. In addition, we are not convinced from the record that withholding consideration at this time will impose undue hardship upon the parties. Adjudication of this issue can await a more concrete presentation of the dispute. Thus, AMSAT's claim is not ripe for adjudication.
 
 
 25
 For similar reasons, AMSAT also lacks standing to assert its equal protection claim. Article III of the Constitution requires a party invoking federal jurisdiction to establish, at a minimum:
 
 
 26
 (1) personal injury or threat of injury; (2) that the injury fairly can be traced to the action challenged; and (3) that the injury is likely to be redressed by the requested relief.
 
 
 27
 Heldman v. Sobol, 962 F.2d 148, 154 (2d Cir.1992); see Northeastern Florida Chapter of the Associated Gen. Contractors of Am. v. City of Jacksonville, --- U.S. ----, ----, 113 S.Ct. 2297, 2301, 124 L.Ed.2d 586 (1993). AMSAT has failed to satisfy the first, "injury in fact," prong of the Article III standing test. This case is controlled by the reasoning of the Supreme Court in Warth v. Seldin, 422 U.S. 490, 95 S.Ct. 2197, 45 L.Ed.2d 343 (1975). In Warth, plaintiffs claimed that a town's zoning ordinance, facially and as applied, violated the Fourteenth Amendment by preventing low and moderate income persons from living in the municipality. An association of construction firms sought to intervene in the suit, alleging that the zoning ordinance deprived certain of its members of opportunities to enter into contracts in the town, and derive profits thereby. The Court concluded that the association lacked standing because it did not allege that its members had been precluded from entering into any specific projects, or indeed that any member of the association had applied to the town for a building permit with respect to any then-current project. The Court concluded that the claim lacked "sufficient immediacy ... to warrant judicial intervention." Id. at 516, 95 S.Ct. at 2214.
 
 
 28
 AMSAT similarly fails to allege that it has sought or, if granted a statutory right of access, would seek to provide service in a building open to franchised cable providers. Thus, like the association in Warth, it has failed to point to a concrete injury incurred as a result of the governmental action that it challenges.
 
 
 29
 This case is distinguishable from the Supreme Court's recent decision in Northeastern Florida Chapter. In that case, the plaintiff association, composed primarily of non-minority contractors, challenged a municipal ordinance requiring the provision of 10% of city contracts to minority-owned businesses. The contractors did not allege that they had applied for contracts and been denied them pursuant to the ordinance. However, they did allege that they had applied for contracts from the defendant city in the past and would bid for the contracts covered by the statutory set-aside in the absence of the ordinance. The Supreme Court held that the plaintiffs had standing because they averred that the challenged "discriminatory policy [prevented them] from [bidding on contracts] on an equal basis." Northeastern Florida Chapter, --- U.S. at ----, 113 S.Ct. at 2303; see also Reno v. Catholic Social Servs., Inc., --- U.S. ----, ---- n. 19, 113 S.Ct. 2485, 2496 n. 19, 125 L.Ed.2d 38 (1993) (noting significance of "history of application behavior" to holding in Northeastern Florida Chapter ). AMSAT, by contrast, has not alleged or proffered admissible evidence tending to prove that it has been denied access to buildings it sought to service in the past, or that it will seek to enter into buildings open to franchised operators if given the statutory right to do so in the future.
 
 B. Stamford Apartments
 
 30
 Stamford Apartments contends that application of Sec. 16-333a to require it to provide Cablevision with access to Hoyt-Bedford would unconstitutionally compel it to speak. We disagree.
 
 
 31
 This case differs from Supreme Court cases involving compelling private institutions to carry the messages of others. In those cases, the Court expressed its concern over the risk that speakers would be forced to associate themselves with the views of other speakers. Thus, in Pacific Gas & Elec. Co. v. Public Utils. Comm'n of Cal., 475 U.S. 1, 106 S.Ct. 903, 89 L.Ed.2d 1 (1986), the Court held that a public utility could not be forced to use its own billing envelopes to distribute the message of a consumer group. Similarly, in Miami Herald Publishing Co. v. Tornillo, 418 U.S. 241, 94 S.Ct. 2831, 41 L.Ed.2d 730 (1974), the Court held that a newspaper could not be compelled to carry replies to its editorials.
 
 
 32
 The statute at issue here merely grants Cablevision the right to transmit its speech on its own equipment housed on property that has been acquired from building owners under condemnation procedures. Nothing in the record suggests that transmission of Cablevision's programming via easements into the homes of Stamford Apartments' tenants will associate Stamford Apartments with Cablevision's programming in any meaningful way. Thus, even assuming that Stamford Apartments is a speaker within the meaning of the First Amendment, cf. Leathers, 499 U.S. at 444-45, 111 S.Ct. at 1442, Sec. 16-333a will not operate to violate Stamford Apartments' First Amendment rights.
 
 II. Takings Claim
 
 33
 Plaintiffs claim that Sec. 16-333a is facially invalid under the Takings Clause of the Fifth Amendment, as applicable to Connecticut under the Fourteenth Amendment. This claim is without merit.
 
 
 34
 Section 16-333a includes the following provisions requiring the DPUC to provide for compensation to property-owners for the taking of portions of their property in connection with the installation of franchised cable operators' equipment:
 
 
 35
 (e) The department shall adopt regulations ... authorizing community antenna television companies, upon application by the owner of a multiunit residential building and approval by the department, to reasonably compensate the owner for any taking of property associated with the installation of wiring and ancillary facilities for the provision of community antenna television service. The regulations may include, without limitation:
 
 
 36
 (1) Establishment of a procedure under which owners may petition the department for additional compensation;
 
 
 37
 * * * * * *
 
 
 38
 (3) Establishment of criteria for determining any additional compensation that may be due;
 
 
 39
 * * * * * *
 
 
 40
 (g) Any determination by the department under subsection (e) regarding the amount of compensation to which an owner is entitled ... may be appealed by an aggrieved party in accordance with section 4-183.
 
 
 41
 Plaintiffs' primary takings theory on appeal is that Connecticut's statutory scheme improperly delegates authority to make compensation decisions to the DPUC, subject to judicial review. In Florida Power Corp. v. F.C.C., 772 F.2d 1537, 1544-47 (11th Cir.1985) (en banc), rev'd on other grounds, 480 U.S. 245, 107 S.Ct. 1107, 94 L.Ed.2d 282 (1987), the Eleventh Circuit held that the Constitution prohibits Congress from prescribing binding rules to be applied by federal agencies in determining just compensation. The reasoning of Florida Power was based on the application of federal separation-of-powers principles in the context of the Takings Clause. The court reasoned that the Constitution reserves the power to determine the measure of just compensation to the federal courts, not Congress. The Florida Power court did not examine the permissibility of state legislatures prescribing such rules for application by state administrative agencies. Moreover, Sec. 16-333a does not appear to prescribe a binding rule with respect to the ascertainment of just compensation.
 
 
 42
 Plaintiffs also assert that there is no guarantee that the DPUC will be impartial in its ratemaking decisions. This does not provide a basis for a facial challenge to Sec. 16-333a. In any event, while Conn.Gen.Stat. Sec. 4-183 provides that, in an appeal of a final administrative decision to the Connecticut Superior Court, judicial review is generally limited to the facts presented in the administrative record, see Conn.Gen.Stat. Sec. 4-183(j), and that "[t]he court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact," id., the statute also provides that the reviewing court shall not affirm if it finds "that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are," inter alia, "[i]n violation of constitutional or statutory provisions...." Thus, by the terms of Sec. 16-333a, any allegedly constitutionally undercompensated taking approved by the administrative agency can be challenged on appeal. See Baerst v. Connecticut State Bd. of Educ., No. CV920508806, 1993 WL 55261 (Conn.Super.Ct. Feb. 10, 1993).
 
 
 43
 Finally, plaintiffs claim that Sec. 16-333a does not serve a public purpose, as required by the Takings Clause. Plaintiffs rely on a case applying a Michigan Constitutional test requiring a "clear and significant" showing that a condemnation statute that serves private interests is predominantly directed toward serving public interests. City of Lansing v. Edward Rose Realty, Inc., 192 Mich.App. 551, 481 N.W.2d 795 (Mich.App.), aff'd, 442 Mich. 626, 502 N.W.2d 638 (Mich.1993) (discussing state and federal standards). However, the federal standard is otherwise. As stated in Hawaii Housing Auth. v. Midkiff, 467 U.S. 229, 241, 104 S.Ct. 2321, 2329, 81 L.Ed.2d 186 (1984), the exercise of eminent domain power will be upheld where it "is rationally related to a conceivable public purpose...." Since the statute at issue here manifestly serves the public purpose of guaranteeing that apartment residents can freely obtain access to state franchised cable service, this argument fails.
 
 III. Preemption Arguments
 
 44
 Plaintiffs assert two principal preemption arguments. First, they contend that the Cable Act preempts Sec. 16-333a. Second, they contend that Sec. 16-333a is preempted by the ruling of the FCC in In re: Earth Satellite Communications Inc., 95 F.C.C.2d 1223 (1983), aff'd sub nom. New York State Comm'n on Cable Television v. F.C.C., 749 F.2d 804 (D.C.Cir.1984) ("ESCOM "), construing the Communications Act. Both arguments fail.
 
 
 45
 In Cable Television Ass'n of N.Y., Inc. v. Finneran, 954 F.2d 91 (2d Cir.1992), we set forth the applicable preemption standard: "Where there are persuasive indicia that Congress intended exclusive federal regulation of the sphere in question, then the state act cannot stand. Absent such an intent, the state rule will only fall if it actually conflicts with the federal law." Id. at 95 (citation omitted).
 
 
 46
 Plaintiffs' first preemption argument is based upon the fact that Congress considered and rejected including a cable access provision as part of the Cable Act. This legislative decision is not, in itself, sufficient to give rise to a presumption that Congress intended to preempt states from enacting and enforcing their own similar provisions. Moreover, Congress was well aware of the existence of cable access provisions in several states when it enacted the Cable Act and chose not expressly to preempt or otherwise limit the scope of those provisions. See, e.g., 130 Cong.Rec. 27,975 (1984) (statement of Representative Wirth; fact that Cable Act did not include cable access provision "in no way affects the applicability of" state cable access laws). And Sec. 16-333a neither conflicts with any provision of the Cable Act nor falls within any of the statute's express preemption provisions. AMSAT notes that the Cable Act "authorize[s] the construction of ... cable system[s] over public rights-of-way" and through "compatible" easements, 47 U.S.C. Sec. 541(a)(2), while Sec. 16-333a additionally provides for the taking of private property in constructing such systems. However, as the FCC points out in its amicus brief, the mere fact that Sec. 16-333a provided cable operators with greater authority in constructing their systems than provided by the Cable Act does not render the state and federal provisions inconsistent.
 
 
 47
 Plaintiffs' argument based on ESCOM fails not only because the FCC decision did not indicate a policy to preclude states from enacting cable access statutes, but--as Magistrate Judge Margolis recognized and the FCC states in its amicus brief--also because that decision was premised upon the existence of statutes like the one at issue here. ESCOM implicitly recognized that cable access laws were permissible, so long as they provided SMATV broadcasters with an opportunity to compete with franchised cable operators and did not interfere with interstate and federally controlled communications systems. See ESCOM, 95 F.C.C.2d at 1235. Moreover, in its brief to this court, the FCC expressly disavowed any intention to preempt cable access laws.
 
 
 48
 We have considered plaintiffs' remaining contentions and found them to be without merit.
 
 CONCLUSION
 
 49
 The judgment of the district court is affirmed.
 
 
 
 *
 Hon. Morris E. Lasker, Senior Judge, United States District Court for the Southern District of New York, sitting by designation