143 F.3d 31
 Mervyn THOMAS, Minority Livery Owners and Drivers Coalition,
Neville Cooper, and Hispanic Coalition of Base
Owners, Plaintiffs-Appellants,
v.
CITY OF NEW YORK, Diane McGrath-McKechnie, as Commissioner
of the Taxi and Limousine Commission of the City of New
York, Taxi and Limousine Commission of the City of New York,
and New York City Council, Defendants-Appellees.
 No. 97-7822.
 United States Court of Appeals,
Second Circuit.
 Argued April 7, 1998.
Decided April 28, 1998.
 
 Victor A. Worms, Brooklyn, NY, for Plaintiffs-Appellants.
 Stuart D. Smith, for Jeffrey D. Friedlander, Acting Corp. Counsel of City of New York, New York City (Barry P. Schwartz, of counsel), for Defendants-Appellees.
 Before: WINTER, Chief Judge, and McLAUGHLIN and CALABRESI, Circuit Judges.
 CALABRESI, Circuit Judge:
 
 
 1
 Plaintiffs-appellants, two associations of minority livery car base station owners (the Minority Livery Owners and Drivers Coalition, and the Hispanic Coalition of Base Owners) and two individual owners (Mervyn Thomas and Neville Cooper), brought a 42 U.S.C. § 1983 action challenging the constitutionality of New York City Local Law No. 51 and the regulations promulgated under it by the City's Taxi and Limousine Commission ("TLC").
 
 
 2
 The United States District Court for the Southern District of New York (John S. Martin, Jr., Judge ) denied plaintiffs' motion for a preliminary injunction, which sought to bar the enforcement of Local Law No. 51, and granted defendants' cross-motion to dismiss the complaint, pursuant to Fed.R.Civ.P. 12(b)(6). Plaintiffs appeal the dismissal.[1]
 
 I. BACKGROUND
 
 3
 Local Law No. 51 amended the Administrative Code of the City of New York with respect to the licensing requirements for base stations that dispatch livery cars. Base stations are central facilities that manage, organize, or dispatch for-hire vehicles. Livery cars are only one type of licensed for-hire vehicles that serve the residents of New York City. They are distinguished from "black cars" and "luxury limousines" (other types of for-hire vehicles), each of which must certify to the TLC that more than ninety percent of their business is compensated in ways other than through direct cash payments by passengers.
 
 
 4
 Prior to the enactment of Local Law No. 51 (on May 26, 1996), livery car base station operators were subject to the same licensing requirements as black car and luxury limousine base station operators. And, as to both, renewal was pretty much automatic upon the TLC's receipt of a pre-printed renewal form and a five hundred dollar payment. Local Law No. 51, however, imposed additional requirements upon livery car base station operators only. These requirements include: (1) that base stations must provide one off-street parking space for every two vehicles they dispatch;[2] (2) that the TLC, through a discretionary review process, must evaluate, inter alia, the costs and benefits of providing livery car services in a particular neighborhood, and the "fitness" of the particular applicant;[3][3] and (3) that a $5000 bond must be posted to guarantee that the City will be able to collect civil fines incurred by drivers affiliated with the base station.
 
 
 5
 In their appeal from the dismissal of the complaint, plaintiffs seek permanently to enjoin the enforcement of Local Law No. 51 and its regulations and ask that both be declared unconstitutional and in violation of plaintiffs' rights (1) to procedural due process; (2) to equal protection of the laws; and (3) to substantive due process. Plaintiffs claim that Local Law No. 51 contravenes procedural due process by delegating adjudicative authority to the TLC to determine whether to issue and to renew base station licenses without providing for an administrative hearing before a license is denied. Plaintiffs assert that Local Law No. 51 violates equal protection of the laws by unfairly discriminating against livery car base station operators, who are alleged to be predominantly African Americans and Hispanics. This, plaintiffs claim, is done through the imposition of more stringent licensing requirements on livery car base station operators than are imposed on other for-hire base stations that are allegedly owned primarily by Whites. Finally, plaintiffs claim that the $5000 bond requirement infringes substantive due process by placing vicarious liability on base station operators for the criminal acts of their affiliated car drivers, who are, it is said, independent contractors.
 
 
 6
 We vacate the district court's dismissal, on the merits, of plaintiffs' procedural due process claim, and dismiss the claim on jurisdictional grounds, because it is not ripe for review and hence is not justiciable. And we affirm the district court's dismissal of the equal protection and substantive due process allegations for failure to state claims upon which relief can be granted.
 
 II. DISCUSSION
 A. Justiciability and Ripeness
 
 7
 To be justiciable, plaintiffs' claims must be ripe for federal review. See AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. Partnership, 6 F.3d 867, 872 (2d Cir.1993). The ripeness doctrine protects the government from "judicial interference until a[ ] ... decision has been formalized and its effects felt in a concrete way by the challenging parties." Abbott Labs. v. Gardner, 387 U.S. 136, 148-49, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967), overruled on other grounds, Califano v. Sanders, 430 U.S. 99, 97 S.Ct. 980, 51 L.Ed.2d 192 (1977). Moreover, an Article III court "cannot entertain a claim which is based upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.' " Oriental Health Spa v. City of Fort Wayne, 864 F.2d 486, 489 (7th Cir.1988) (quoting Thomas v. Union Carbide Agric. Prods. Co., 473 U.S. 568, 580-81, 105 S.Ct. 3325, 3333, 87 L.Ed.2d 409 (1985)). Thus, when resolution of an issue turns on whether "there are nebulous future events so contingent in nature that there is no certainty they will ever occur," the case is not ripe for adjudication. In re Drexel Burnham Lambert Group Inc., 995 F.2d 1138, 1146 (2d Cir.1993).
 
 
 8
 Because the "ripeness doctrine is drawn both from Article III limitations on judicial power and from prudential reasons for refusing to exercise jurisdiction," the court can raise it sua sponte, and, indeed, can do so for the first time on appeal. Reno v. Catholic Soc. Servs., Inc., 509 U.S. 43, 58 n. 18, 113 S.Ct. 2485, 2496 n. 18, 125 L.Ed.2d 38 (1993). It is, therefore, of no moment that the defendants in this case have failed to argue the issue.
 
 1. Procedural Due Process Claim
 
 9
 Assuming arguendo (as did the district court below) that plaintiffs have a property or liberty interest in the continued renewal of their licenses, it is, nonetheless, premature for us to decide whether the TLC's process of license issuance and renewal violates due process. None of the plaintiffs has, to date, been denied a license. And, while on the face of Local Law No. 51 and its regulations, no proceedings--either written findings or oral hearings--are mandated prior to the denial of licenses or of license renewals, we do not know at this time what procedures the TLC will in fact follow before denying licenses. It follows that a claim that a base station operator has been denied a license renewal without procedural due process is best considered in the context of a specific factual setting.
 
 
 10
 In Coffran v. Board of Trustees, 46 F.3d 3 (2d Cir.1995) (per curiam), we held that a due process claim arising out of a medical board's recommendation that a police sergeant be involuntarily retired was not ripe for review where the final decisionmaking board had not ruled on the recommendation. We there stated:
 
 
 11
 Under Article III of the Constitution, it is "axiomatic" that this Court may not exercise jurisdiction over a dispute unless the plaintiff shows " 'that he personally has suffered some actual or threatened injury as a result of the putatively illegal conduct of the defendant.' " Where the challenged procedures have not been applied to the claimant, ... the Article III requirements have not been met.
 
 
 12
 Id. at 4 (citations omitted). The same principles apply in the instant case.
 
 
 13
 There are, of course, some limited situations in which preenforcement review of the validity of a statute or regulation is warranted. This occurs principally when an individual would, in the absence of court review, be faced with a choice between risking likely criminal prosecution entailing serious consequences, or forgoing potentially lawful behavior. For as the Supreme Court has said, in deciding whether a case is ripe, two factors must be considered: (1) "the hardship to the parties of withholding court consideration," and (2) "the fitness of the issues for judicial decision." Abbott Labs., 387 U.S. at 149, 87 S.Ct. at 1515.[4]
 
 
 14
 In the instant case, not one of plaintiffs' licenses has been denied. As a result, plaintiffs have not, as yet, suffered any harm to their procedural due process rights. Nor does any immediate hardship befall the parties if preenforcement review is denied. See State Farm Mut. Auto. Ins. Co. v. Dole, 802 F.2d 474, 479-80 (D.C.Cir.1986) ("It is well settled that for an institutional interest in deferral to be outweighed, postponing review must impose a hardship on the complaining party that is immediate, direct, and significant.").[5] Accordingly, "we think it unadvisable to consider the issue at this time in the context of a broad facial challenge to the regulations. We will leave the resolution of such challenges to case-by-case dispositions in concrete enforcement actions." Cronin v. Federal Aviation Admin., 73 F.3d 1126, 1128 (D.C.Cir.1996).[6] And we hold that plaintiffs' challenge to the procedures for renewal and issuance of licenses contained in the law and regulations is not ripe for review.[7]
 
 
 15
 2. Equal Protection and Substantive Due Process Claims
 
 
 16
 Unlike their procedural due process claim, plaintiffs' equal protection and substantive due process claims are ripe for review. The equal protection claim challenges the imposition of allegedly discriminatory and burdensome requirements (such as off-street parking), which must be adhered to forthwith.[8] The substantive due process claim challenges the regulations' $5000 bond requirement, which is a precondition for license renewal. As to both of these, plaintiffs must either incur great expense to comply with the requirements, or (if they choose to challenge the regulation through noncompliance) run the risk of incurring potentially even greater burdens--the denial of their licenses and the end of their businesses. Thus, in contrast to plaintiffs' due process claim, which alleged only that a future injury might result from enforcement of the regulations without procedural due process, the equal protection and substantive due process claims allege a present hardship that results directly from the regulations themselves.
 
 
 17
 As in Abbott Laboratories, "the impact of the regulations upon the [plaintiffs] is sufficiently direct and immediate as to render the issue appropriate for judicial review at this stage." Abbott Labs., 387 U.S. at 152, 87 S.Ct. at 1517. Because plaintiffs' equal protection and substantive due process claims are "fit for judicial resolution, and ... [the] regulation requires an immediate and significant change in the plaintiffs' conduct of their affairs with serious penalties attached to noncompliance, access to the courts ... must be permitted." Id. at 153, 87 S.Ct. at 1518.[9] We therefore examine the merits of these claims.
 
 B. Rule 12(b)(6) Dismissal
 
 18
 We review de novo a district court's dismissal of a complaint for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6), see Belliveau v. Stevenson, 123 F.3d 107, 108 (2d Cir.1997), and we affirm such a dismissal only where "it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief," Cohen v. Koenig, 25 F.3d 1168, 1172 (2d Cir.1994) (internal quotation marks and citation omitted). We must take "as true the facts alleged in the complaint and draw[ ] all reasonable inferences in the plaintiff's favor." Jackson Nat'l Life Ins. Co. v. Merrill Lynch & Co., 32 F.3d 697, 699-700 (2d Cir.1994).
 
 1. Equal Protection Claim
 
 19
 Plaintiffs claim that Local Law No. 51 violates the Equal Protection Clause because it imposes more burdensome requirements upon livery car base station operators than upon operators of black car or luxury limousine base stations. As the district court held, the plaintiffs' claim is clearly barred by the Supreme Court's decision in Village of Arlington Heights v. Metropolitan Housing Development Corp. See 429 U.S. 252, 264-65, 97 S.Ct. 555, 562-63, 50 L.Ed.2d 450 (1977) ("Proof of racially discriminatory intent or purpose is required to show a violation of the Equal Protection Clause.").
 
 
 20
 On appeal, plaintiffs also argue that the district court, in dismissing the equal protection claim, relied upon the affidavit of William Considine, Deputy Commissioner for Legal Affairs for the TLC, which sought to justify Local Law No. 51 on safety grounds. And they contend that on a motion to dismiss "[i]f the court considers matters outside of the complaint, it must treat the motion as one for summary judgment and proceed under Fed.R.Civ.P. 56, giving the party opposing the motion notice, an opportunity to submit pertinent material and, if need be, conduct discovery." Ryder Energy Distrib. Corp. v. Merrill Lynch Commodities, Inc., 748 F.2d 774, 779 (2d Cir.1984). But "[t]his procedural error ... [does] not require reversal if the dismissal can be justified without reference to matters outside of the complaint." Id. Notwithstanding the district court's apparent error in relying on the outside affidavit, it remains true that the plaintiffs did not allege sufficient facts to support discriminatory intent on the part of the legislature. The district court's dismissal can, therefore, be justified without any reliance on the outside affidavit.
 
 2. Substantive Due Process Claim
 
 21
 Plaintiffs contend that the $5000 bond requirement imposes vicarious criminal liability upon them for offenses committed by others, namely their affiliated drivers, who are said to be independent contractors. The district court credited this argument, but stated that "[w]hile it is true that generally criminal liability is personal, vicarious liability is not unknown in the criminal law." It found that "[t]he subsection requiring the posting of a five thousand dollar bond for the benefit of the City is merely a collection device that operates no differently when affiliated drivers fail to pay either a criminal or civil fine."
 
 
 22
 The district court erred in this finding, for Local Law No. 51 does not impose any vicarious criminal liability at all. It is expressly limited to the recoupment of civil penalties.[10] This restriction in the law's applicability was, moreover, confirmed by the defendants during oral argument. Under the circumstances, plaintiffs' attack on vicarious criminal liability is meritless. We, therefore, affirm, albeit on different grounds from the court below, the dismissal of this claim for failure to state a claim upon which relief can be granted.
 
 III. CONCLUSION
 
 23
 We have examined all of plaintiffs' additional contentions and find them to be without merit. Accordingly, the district court's ruling on the procedural due process claim is VACATED, that claim is DISMISSED as not ripe for federal review, and the dismissal of the equal protection and substantive due process claims by the district court is AFFIRMED.
 
 
 
 [1]
 Plaintiffs do not appeal the denial of the preliminary injunction
 
 
 [2]
 The law provides for a two-year grace period in complying with the off-street parking requirement, New York, N.Y., Local Law No. 51, § 4(c) (1996), implemented by New York, N.Y., For-Hire Vehicle Rules, Title 35, § 6-03(b)(2) (1996), and a discretionary waiver of the requirement by TLC for reasons of "economic hardship," id. § 4(h), implemented by New York, N.Y., For-Hire Vehicle Rules, Title 35, § 6-03(b)(3)
 
 
 [3]
 Under Local Law No. 51, "[i]n determining the fitness of the applicant the commission shall consider, but is not limited to considering, such factors as the ability of the applicant to adequately manage the base station, the applicant's financial stability and whether the applicant operates or previously operated a licensed base station and the manner in which any such base station was operated." Id. § 4(d)(1), implemented by New York, N.Y., For-Hire Vehicle Rules, § 6-03(c)(1)
 
 
 [4]
 In Abbott Laboratories, the FDA had promulgated a regulation requiring the inclusion of generic names for prescription drugs on all labels. Violations of the regulation were punishable by civil and criminal sanctions. Thirty-seven drug companies challenged the regulation as exceeding the scope of the FDA's authority under the pertinent statutes. It was under these circumstances that the Court permitted preenforcement review
 
 
 [5]
 Cf. Toilet Goods Ass'n v. Gardner, 387 U.S. 158, 165, 87 S.Ct. 1520, 1525, 18 L.Ed.2d 697 (1967) (finding that there was minimal hardship to the party in denying preenforcement review of a regulation that permitted the FDA free access to all manufacturing processes involved in the production of color additives and authorized the suspension of certifications for sale if access was denied, since "a refusal to admit an inspector here would at most lead only to a suspension of certification services to the particular party, a determination that can then be promptly challenged through an administrative procedure, which in turn is reviewable by a court")
 
 
 [6]
 Accord Oriental Health Spa v. City of Fort Wayne, 864 F.2d at 488-90 (holding that massage parlor's claim attacking license suspension and revocation provisions was not ripe for review since parlor had never had its license suspended or revoked); Allendale Leasing, Inc. v. Stone, 614 F.Supp. 1440, 1448 (D.R.I.1985) (procedural due process claim against bingo license revocation and suspension procedures held not ripe for review where the state had not revoked or suspended the plaintiff's license), aff'd, 788 F.2d 830 (1st Cir.1986)
 
 
 [7]
 In dismissing the plaintiffs' procedural due process claim, the district court held that no due process was needed since the law constituted a legislative decision to deny licenses. But whether this is so or not depends on whether the license renewal decisions are, in fact, fully legislative or, at least in part, adjudicative. "The test for determining whether official action is adjudicative or legislative focuses on the function performed by the decisionmaker...." RR Village Ass'n, Inc. v. Denver Sewer Corp., 826 F.2d 1197, 1204 (2d Cir.1987). "Adjudicative facts" are "facts about the parties and their activities, businesses, and properties, as distinguished from general facts which help the tribunal decide questions of law and policy and discretion." Langevin v. Chenango Court, Inc., 447 F.2d 296, 300 (2d Cir.1971) (Friendly, C.J.) (internal quotation marks and citation omitted). Local Law No. 51 directs the TLC to consider what look like adjudicative facts (such as the "fitness of the applicant") in making its decisions, see supra note 3. And "[n]ormally, when a[n] ... administrative agency is about to take action adverse to a citizen, on the basis of 'adjudicative facts,' due process entitles the citizen at some stage to have notice, to be informed of the facts on which the agency relies, and to have an opportunity to rebut them." Langevin, 447 F.2d at 300 (citing, inter alia, Londoner v. City & County of Denver, 210 U.S. 373, 28 S.Ct. 708, 52 L.Ed. 1103 (1908) (holding that board's application of legislatively-mandated standard for tax assessment to particular case was subject to the requirements of procedural due process)). In view of our holding that the procedural due process issue is not ripe, however, the question of whether the official action is legislative or adjudicative is not before us
 
 
 [8]
 Renewal of licenses is conditioned upon a showing that the licensee will provide off-street parking within two years of the renewal, see supra note 2. In order to comply with this requirement, licensees will likely need to incur the immediate costs of constructing additional parking facilities, or of arranging for the rental of parking spaces
 
 
 [9]
 Similarly, we find that plaintiffs have standing to bring these claims. We have held that standing has been shown where "(1) there exists a reasonable likelihood that the plaintiff is in the disadvantaged group, (2) there exists a government-erected barrier, and (3) the barrier causes members of one group to be treated differently from members of the other group." Comer v. Cisneros, 37 F.3d 775, 793 (2d Cir.1994). All these requirements are met both as to the equal protection claim and as to the substantive due process claim
 
 
 [10]
 The provision states:
 Prior to the issuance of a license for a base station or the renewal of a valid base station license, the applicant shall provide to the commission a bond in the amount of five thousand dollars with one or more sureties to be approved by the commission. Such bond shall be for the benefit of the city and shall be conditioned upon the licensee complying with the requirement that the licensee dispatch only vehicles which are currently licensed by the commission and which have a current New York city commercial use motor vehicle tax stamp and upon the payment by the licensee of all civil penalties imposed pursuant to any provision of this chapter.
 New York, N.Y., Local Law No. 51, § 4(f), implemented by New York, N.Y., For-Hire Vehicle Rules, Title 35, § 6-03(e).