Ronald ROTHENBERG, Plaintiff,

v.

**James STONE, in his official capacity as Commissioner of the New York State of Mental Health, and Thomas Spota, in his official capacity of District Attorney of Suffolk County, Defendants.**

No. CV 02–649(ADS)(WW).

United States District Court,
E.D. New York.

Dec. 27, 2002.

Mental Disability Law Clinic Touro College, By: William M. Brooks, of Counsel, Huntington, NY, for the Plaintiff.

Eliot Spitzer, Attorney General of the State of New York, By: Ralph Pernick, Assistant Attorney General, Mineola, NY, for James Stone.

Robert J. Cimino, Suffolk County Attorney, By: Derrick J. Robinson, Assistant County Attorney, Hauppauge, NY, for Thomas Spota.

**MEMORANDUM OF DECISION
AND ORDER**

SPATT, District Judge.

This case involves allegations by Ronald Rothenberg ("Rothenberg" or the "plain-

tiff") that Thomas Spota ("Spota") and James Stone ("Stone") (collectively, the "defendants") violated his equal protection rights by failing, among other things, to transfer him to a psychiatric hospital in Pennsylvania. Presently before the Court is the defendants' motion to dismiss this action pursuant to Federal Rules of Civil Procedure ("Fed. R. Civ.P.") 12(b)(1) and 12(b)(6) for lack of subject matter jurisdiction and failure to state a claim.

## I. BACKGROUND

The following facts are taken from an amended complaint filed by the plaintiff on May 6, 2002, which the Court takes to be true. In approximately 1992, the plaintiff was diagnosed as suffering from depression and began taking anti-depressant medication. On October 29, 1994, at his wife's suggestion, Rothenberg stopped taking his medication. On November 13, 1994, while driving with his wife, the plaintiff suffered a depressive episode and was involved in an automobile accident. As a result of the injuries sustained in the accident, Rothenberg's wife died.

Rothenberg was charged with manslaughter in the second degree. He pleaded "not guilty by reason of insanity," and the criminal court accepted his plea. Subsequently, he was placed in Pilgrim Psychiatric Center ("Pilgrim"), a non-secure facility, which treats, among others, individuals who have pleaded not responsible by reason of mental disease or defect. Rothenberg currently resides at Pilgrim.

In mid-December 2000, a patient who shared an adjoining bathroom with the plaintiff began making homosexual advances toward him. In mid-March 2001, the patient raped the plaintiff. According to the plaintiff, other patients began threatening him with assault, sexual abuse, sodomy, and rape. On March 23, 2001, the plaintiff informed Susan Laskawaski

("Laskawaski"), who supervised his psychiatric treatment, that he had been threatened with sexual assault by other patients, but did not report that he had been raped. Laskawaski advised him to ignore the threats and that such threats could not be controlled in that particular environment.

At the end of March 2001, the patient again raped the plaintiff. Again, in April 2001 and also in May 2001, the patient raped the plaintiff.

On approximately April 6, 2001, in seeking to get a room transfer, the plaintiff reported to his parents, his doctor, and Laskawski that the patient had been making sexual advances toward him. Frightened of retaliation by the patient, he did not inform them that the patient had raped him. Thereafter, the plaintiff's doctor and Pilgrim officials transferred him to two other rooms and then finally placed him in a room with another patient.

On or about May 19, 2001, the plaintiff's parents, who reside in Pennsylvania, visited him. During the visit, the plaintiff's parents noticed fecal matter in the plaintiff's undergarments. His parents informed staff members at Pilgrim that they suspected their son was being sexually abused, assaulted, sodomized, or raped by one or more residents.

The plaintiff's new roommate began making sexual advances toward him. On approximately June 3, 2001, the plaintiff consented to have sex with his roommate out of fear that if he did not consent, he would be sexually assaulted again. Immediately thereafter, the plaintiff was raped by another patient.

Finally, in June 2001, the plaintiff reported to his parents that he was being sexually abused. The plaintiff asked to be placed in a program at Pilgrim that provides counseling and therapy sessions for

victims of rape, but Pilgrim denied his request.

The plaintiff also requested to be transferred to a psychiatric facility in Pennsylvania to be closer to his parents. However, Pilgrim maintains a policy of transferring civil patients out of state but not insanity acquittees. In addition, according to the plaintiff, Pennsylvania maintains a similar policy of accepting civil patients from other states as transferees but not insanity acquittees. The plaintiff claims that in all respects he is an appropriate candidate for transfer to a facility to another state, but because of his status as an insanity acquittee, he is not permitted to be transferred.

On May 6, 2002, the plaintiff filed an amended complaint which seeks an injunction directing Stone to transfer the plaintiff to any Pennsylvania institution in order to be closer to his parents and to avoid further physical and sexual assaults. The plaintiff asserts that by not transferring him to a facility in Pennsylvania because of his status as an insanity acquittee, Pilgrim is denying him equal protection under the law, in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983.

In addition, pursuant to 28 U.S.C. § 2201 and Fed.R.Civ.P. 57, the plaintiff seeks declaratory relief against Stone for subjecting him "to treatment decisions that have constituted a substantial departure from accepted judgment, practices or standards" by denying the plaintiff the opportunity to participate in a program of counseling and therapy for rape victims in violation of the Fourteenth Amendment and 42 U.S.C. § 1983. The plaintiff further requests declaratory relief against Stone for violating his right to remain free from harm in violation of the Fourteenth Amendment and 42 U.S.C. § 1983.

On May 24, 2002, Stone filed a motion to dismiss pursuant to Rules 12(b)(1) and 12(b)(6) of the Fed.R.Civ.P. On June 21, 2002, Spota filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(6) and joined in the motion submitted by Stone.

## II. DISCUSSION

### A. Subject Matter Jurisdiction and Ripeness

■ "Because a motion to dismiss for lack of subject matter jurisdiction pursuant to Fed.R.Civ.P. 12(b)(1) concerns a court's 'very power to hear the case,' that issue should be decided first." *West 95 Housing Corp. v. New York City Dep't of Hous. Pres. & Dev.*, 2001 WL 664628, at *3, 2001 U.S. Dist. LEXIS 7784, at *9 (S.D.N.Y. June 12, 2001) (citing *United States ex rel. Kreindler & Kreindler v. United Techs. Corp.*, 985 F.2d 1148, 1155–56 (2d Cir.1993)). To resolve the Rule 12(b)(1) motion, the Court may consider evidence outside the pleadings. *See id.* at *3, 2001 U.S. Dist. LEXIS 7784, at *10. The plaintiff bears the burden of proving, by a preponderance of the evidence, that the Court has subject matter jurisdiction over their case. *See Makarova v. United States*, 201 F.3d 110, 113 (2d Cir.2000).

The plaintiff claims that by not transferring the plaintiff to a Pennsylvania facility by virtue of his status as an insanity acquittee, the defendants denied the plaintiff equal protection in violation of the Fourteenth Amendment of the United States Constitution and 42 U.S.C. § 1983. As such, the plaintiff seeks an injunction directing his transfer from Pilgrim to a psychiatric facility in Pennsylvania.

In response, the defendants argue that the plaintiff's equal protection claim is not ripe on the ground that the plaintiff fails to allege that there is a facility in Pennsylvania that is willing to accept him. However,

the plaintiff explains that Pennsylvania maintains a similar policy to New York of accepting civil patients as transferees, but not insanity acquittees. According to the plaintiff, because the Commissioner of the Pennsylvania Office of Mental Health is not subject to service in this action, he plans to file a similar action in a federal district court in Pennsylvania.

To be justiciable under Article III, courts have long recognized that claims must be ripe. *Thomas v. City of New York*, 143 F.3d 31, 34 (2d Cir.1998). The ripeness doctrine "prevents the courts, through premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 18 L.Ed.2d 681 (1967). A case lacks ripeness when it "involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all." *AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. Partnership*, 6 F.3d 867, 872 (2d Cir. 1993) (citing 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3532.2, at 141 (2d ed.1984)). "When resolution of an issue turns on whether 'there are nebulous future events so contingent in nature that there is no certainty they will ever occur,' the case is not ripe for adjudication." *Thomas*, 143 F.3d at 34 (quoting *In re Drexel Burnham Lambert Group Inc.*, 995 F.2d 1138, 1146 (2d Cir.1993)).

Here, the plaintiff concedes that his equal protection claim depends upon the willingness of Pennsylvania facility to accept him as a transferee. However, Rothenberg does not allege that any Pennsylvania facility has actually accepted him. Indeed, the plaintiff's only response with regard to this issue is that he plans to file a similar action in a Pennsylvania district court to challenge Pennsylvania's policy of accepting only civil patients and not insanity acquittees. Because an Article III court cannot entertain a claim which is based upon "contingent future events that may not occur as anticipated, or indeed may not occur at all," the Court finds that the plaintiff has not established that his equal protection claim is ripe for adjudication. *Thomas v. Union Carbide Agric. Prods. Co.*, 473 U.S. 568, 580–81, 105 S.Ct. 3325, 87 L.Ed.2d 409 (1985). Accordingly, the plaintiff's equal protection claim is dismissed without prejudice.

## B. The Standard under Rule 12(b)(6)

On a motion to dismiss for failure to state a claim, the Court should dismiss the complaint pursuant to Rule 12(b)(6) only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his complaint which would entitle him to relief. *See King v. Simpson*, 189 F.3d 284, 286 (2d Cir.1999); *Bernheim v. Litt*, 79 F.3d 318, 321 (2d Cir.1996). The Court must confine its consideration "to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken." *Leonard F. v. Israel Discount Bank of N.Y.*, 199 F.3d 99, 107 (2d Cir.1999); *Hayden v. County of Nassau*, 180 F.3d 42, 54 (2d Cir.1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. *See Koppel v. 4987 Corp.*, 167 F.3d 125, 127 (2d Cir.1999); *Jaghory v. New York State Dep't of Educ.*, 131 F.3d 326, 329 (2d Cir.1997).

The issue to consider is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims. *See Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 378 (2d Cir.1995). Indeed, it is not the Court's function to weigh the evidence that might be presented at trial; instead, the Court

must merely determine whether the complaint itself is legally sufficient. *Id.*

## C. Eleventh Amendment

■ The defendants move to dismiss the plaintiffs remaining claims on the grounds that the plaintiff is barred by the Eleventh Amendment from suing them in their official capacity.

The plaintiff sues Stone and Spota in their official capacities. Personal-capacity suits seek to impose personal liability upon a government official for actions he takes under color of state law. In contrast, official capacity suits "generally represent only another way of pleading an action against an entity of which an officer is an agent." *Monell v. New York City Dept. of Social Servs.*, 436 U.S. 658, 690, 98 S.Ct. 2018, 56 L.Ed.2d 611 (1978). Therefore, "to the extent that a state official is sued for damages in his official capacity, such a suit is deemed to be a suit against the state, and the official is entitled to invoke the Eleventh Amendment belonging to the state." *Ying Jing Gan v. City of New York*, 996 F.2d 522, 529 (2d Cir.1993).

The Eleventh Amendment prohibits suits against a state or one of its agencies in federal court absent the state's consent or a valid abrogation of its sovereign immunity by an act of Congress. *Pennhurst State School & Hosp. v. Halderman*, 465 U.S. 89, 100–01, 104 S.Ct. 900, 79 L.Ed.2d 67 (1984). The Supreme Court has held that Section 1983 does not abrogate states' sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 343, 99 S.Ct. 1139, 59 L.Ed.2d 358 (1979). Furthermore, New York has not consented to suits in federal court. *See Trotman v. Palisades Interstate Park Comm'n*, 557 F.2d 35, 38–39 (2d Cir.1977).

The Eleventh Amendment bars claims that seek either monetary damages or retroactive injunctive relief. *McGinty v. New York*, 251 F.3d 84, 91 (2d Cir.2001). However, prospective injunctive relief is available against a state officer in his official capacity under the doctrine of *Ex Parte Young*, 209 U.S. 123, 155–56, 28 S.Ct. 441, 52 L.Ed. 714 (1908). This principle is narrowly applied only to prospective injunctive relief and does not extend to claims for retrospective relief. *Ward v. Thomas*, 207 F.3d 114, 119 (2d Cir.2000); *Diblasio v. Novelle*, 2002 WL 31190139, at *8, 2002 U.S. Dist. LEXIS 18424, at *27 (S.D.N.Y. Sept. 27, 2002). Moreover, the Supreme Court has held that the Eleventh Amendment and the principles governing the issuance of declaratory judgments prohibit the award of a declaration that state officials' prior conduct violated federal law. *Green v. Mansour*, 474 U.S. 64, 65–66, 106 S.Ct. 423, 88 L.Ed.2d 371 (1985).

Here, the plaintiff alleges that his rights under the Fourteenth Amendment and 42 U.S.C. § 1983 were violated, and in the complaint, he seeks declaratory relief against Stone "declaring that by denying Ronald Rothenberg the opportunity to participate in a program of counseling and therapy for rape victims, [Pilgrim] officials subjected Rothenberg to treatment decisions that have constituted a substantial departure from accepted judgment, practices or standards...." The plaintiff also seeks declaratory relief against Stone "declaring that [Pilgrim] officials violated the plaintiff's right to remain free from harm...." In addition, the Court notes that nowhere in the complaint does the plaintiff allege that Stone was personally involved in either the plaintiff's treatment or Pilgrim's security decisions. The Court finds that the plaintiff's complaint makes clear that he is seeking declarations that Stone's past conduct violated federal law. He is therefore seeking only retrospective declaratory relief. As such, this Court lacks jurisdiction over his remaining

claims. Accordingly, the defendant's motion to dismiss the complaint is granted.

### III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the plaintiff's equal protection claim is dismissed without prejudice; and it is further

**ORDERED,** that the defendants' motion to dismiss the plaintiff's requests for declaratory relief is granted.

**ORDERED,** that the Clerk of the Court is directed to close this case.

**SO ORDERED.**