Loren J. MONTANO, Philip Ramos, Leonard D. Fillyaw, Jordan K. Wilson, Jr. and Luis Oliveria on behalf of themselves and all other similarly situated persons, Plaintiffs,

v.

SUFFOLK COUNTY LEGISLATURE, County of Suffolk, Suffolk County Board of Elections, Robert Gaffney in his official capacity as County Executive of the County of Suffolk, Defendants.

No. 03–CV–1506 (ADS)(ARL).

United States District Court, E.D. New York.

May 27, 2003.

Frederick K. Brewington, Hempstead, NY, McLaughlin, Gouldborne & Cohen, P.C., Bronx, NY (Randolph M. McLaughlin, Of Counsel), Ferruggia & Calisto, LLP, Hauppauge, NY (Edward A. Calisto, Of Counsel), for the Plaintiffs.

Bee, Ready, Fishbein, Hatter & Donovan, LLP, Mineola, NY (Peter A. Bee, Of Counsel), for the Defendants.

Robert J. Cimino, Hauppauge, NY, by: Robert Cabble, Deputy County Attorney, for Suffolk County.

William D. Wexler, Esq., North Babylon, NY, for the Intervenors, Maxine Postal, David Bishop, Jon Cooper, Ginny Fields, William Lindsay, Brian Foley, Vivian Viloria Fisher and George Guldi.

## ORDER

SPATT, District Judge.

As often happens, the Court finds itself confronted with a redistricting problem, where time is of the essence.

This case involves allegations that the present redistricting plan adopted by the Suffolk County Legislature (the "Legislature") violates the Voting Rights Act of 1965, 42 U.S.C. § 1973, and the Fourteenth and Fifteenth Amendments to the United States Constitution. This decision addresses three issues: (1) whether a challenge to the present redistricting plan is ripe for judicial review; (2) whether the Court should extend the dates for candidates to circulate and file petitions to qualify for the legislative primary election; and (3) whether the appointment of a Special Master is necessary to assist the Court in its determination concerning the validity of the present redistricting plan under federal law and the Constitution.

## I. BACKGROUND

On March 28, 2003, the plaintiffs, who are registered voters in Suffolk County, filed a complaint naming the defendants the Suffolk County Legislature (the "Legislature"), its presiding officer Maxine Postal ("Postal"), the County of Suffolk and the Suffolk County Board of Elections (collectively, the "defendants"), seeking declaratory and injunctive relief based on the defendants' alleged failure to reapportion the Legislature following the publication of the United States Census for 2000, in violation of the Voting Rights Act of 1965, 42 U.S.C. § 1973.

On May 7, 2003, the plaintiffs filed an amended complaint adding claims under the Fourteenth and Fifteenth Amendments to the United States Constitution and certain factual class action allegations. On that same day, the plaintiffs moved by order to show cause for a temporary restraining order directing the defendants to cease all business in Suffolk County until they adopt a redistricting plan for the Legislature, or in the alternative, for an order directing the appointment of a Special Master to recommend a proposed redistricting plan.

On May 14, 2003, the Court heard oral argument on the plaintiffs' motion. At that time, the parties noted the following deadlines in the political calendar: June 3, 2003 is the first day for candidates to gather designating petitions for the legislative primary election; July 10, 2003 is the last day for candidates to file designating petitions; the primary election is scheduled for September 9, 2003; and the general election will be held on November 4, 2003.

After hearing argument from both parties, the Court rendered an oral decision noting that the defendants have failed to timely reapportion the existing district lines of the Legislature in compliance with the Voting Rights Act of 1965. The Court then issued a written order dated May 14, 2003 directing, among other things, that the Legislature hold a meeting on May 15, 2003 to consider and adopt a redistricting plan. In the written order, the Court further stated that in the event a plan was not adopted, the Court would appoint a Special Master pursuant to Rule 53 of the Federal Rules of Civil Procedure to assist the Court in preparing a redistricting plan in conformity with the law.

On May 16, 2003, the parties again appeared before the Court. At that time, the defendants reported that on May 15, 2003, the day before, the Legislature had indeed adhered to the Court's request and adopted a redistricting plan, namely Resolution No. 402–2003 ("Resolution 402"). At this meeting, all 18 legislators were present. 10 legislators voted in favor of Resolution 402; 7 legislators voted against the resolution and 1 abstained. The defendants however noted that, before Resolution 402 can be formally enacted into law, it must be approved by the County Executive; be subjected to a possible petition within 45 days requiring a referendum; and be filed with the New York State Secretary of State.

At the May 16, 2003 session, the plaintiffs then made an oral application to enjoin the Legislature from taking action to enact Resolution 402 on the ground that it violated the Voting Rights Act of 1965 and the Constitution. In response, the Court stated that the plaintiffs must bring their motion for a preliminary injunction by order to show cause. In addition, at that time, the 7 legislators who had voted against Resolution 402 and the 1 legislator who had abstained (the "Intervenors") appeared before the Court and also asserted that the resolution violated the Voting Rights Act of 1965. The Court responded that these legislators must bring a motion for leave to intervene, upon proper notice to all parties.

On May 19, 2003, the plaintiffs moved by order to show cause for an order: (1) granting them leave to file a second amended complaint challenging Resolution 402, adding the County Executive as a defendant and removing Postal as a defendant; (2) declaring that Resolution 402 violates Section 2 of the Voting Rights Act; (3) declaring that Resolution 402 violates the Fourteenth and Fifteenth Amendments to the United States Constitution; (4) preliminarily and permanently enjoining the defendants from calling, holding, supervising or certifying any further elections under the existing or proposed Legislative district lines for any term of office commencing January 1, 2004; (5) preliminarily and permanently enjoining the County Executive Robert Gaffney or any of his designees from executing and/or adopting Resolution 402; (6) appointing a Special Master to assist the Court in drawing district lines for the Legislature that comply with the United States Constitution and the Voting Rights Act; (7) directing the defendants to make all of their computer resources, statistical data and personnel with expertise in reapportionment available to the Court until the Court is satisfied that a valid and proper redistricting plan is in place; and (8) directing the County of Suffolk to pay for the costs associated with the appointment and work of the Special Master.

That same day, May 19, 2003, the Intervenors moved by order to show cause for leave to intervene in the action pursuant to Rule 24(b) of the Federal Rules of Civil Procedure and to pursue the same relief sought by the plaintiffs in the second amended complaint.

On Thursday, May 22, 2003, the parties appeared before the Court. At that time, the Court granted the intervenors' motion to intervene as plaintiffs; granted the plaintiffs' motion for leave to file a second amended complaint; and added the New York State Board of Elections as a defendant in the action. The Court also directed the parties to submit, on or before Friday May 23, 2003 at 5 p.m., their arguments concerning three issues: (1) whether a challenge to Resolution 402 is ripe for judicial review; (2) whether the Court should extend the dates for candidates to circulate and file petitions to qualify for

the legislative primary election; and (3) whether the appointment of a Special Master is necessary to assist the Court in its determination concerning the validity of Resolution 402 under federal law and the Constitution.

## II. DISCUSSION

### A. IS RESOLUTION 402 RIPE FOR JUDICIAL REVIEW?

■ To be justiciable under Article III, a claim must be ripe for judicial review. *Thomas v. City of New York,* 143 F.3d 31, 34 (2d Cir.1998). The ripeness doctrine "prevents the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements." *Abbott Labs. v. Gardner,* 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). A case is not ripe when it " 'involves uncertain and contingent future events that may not occur as anticipated, or indeed may not occur at all.' " *AMSAT Cable Ltd. v. Cablevision of Connecticut Ltd. P'ship,* 6 F.3d 867, 872 (2d Cir.1993) (quoting 13A C. Wright, A. Miller & E. Cooper, Federal Practice & Procedure § 3532.2, at 141 (2d ed.1984)). "When resolution of an issue turns on whether 'there are nebulous future events so contingent in nature that there is no certainty they will ever occur,' the case is not ripe for adjudication." *Thomas,* 143 F.3d at 34 (quoting *In re Drexel Burnham Lambert Group Inc.,* 995 F.2d 1138, 1146 (2d Cir.1993)).

Two decisions in this circuit directly impact the issue of whether these challenges to Resolution 402 are ripe for judicial review: *Longway v. Jefferson County Bd. of Supervisors,* 995 F.2d 12 (2d Cir.1993) ("*Longway I* "); and *Longway v. Jefferson County Bd. of Supervisors,* 24 F.3d 397 (2d Cir.1994) ("*Longway II* ").

In *Longway I,* residents and supervisors of Jefferson County, New York brought an action against Jefferson County and its Board of Supervisors challenging a local legislative reapportionment plan. They alleged that the proposed reapportionment plan was far too broad in its population base because it included transient groups, such as imprisoned felons, group home occupants and military personnel. The Second Circuit affirmed the district court's finding that the issue was ripe for review even though Jefferson County had not adopted any specific reapportionment plan. In that regard, the Second Circuit explained that although Jefferson County had not yet adopted a reapportionment plan, "it is quite clear that whatever plan is ultimately adopted will be based on the broad population base that is the subject of this appeal. We believe, therefore, that there is an active case or controversy and that the questions are fit for judicial determination."

In *Longway II,* the Second Circuit revisited the ripeness issue. 24 F.3d at 400. However, the facts had changed significantly since *Longway I.* Specifically, the voters of Jefferson County had rejected the proposed reapportionment plan in a referendum thereby leaving Jefferson County with no plan under consideration. The parties argued, among other things, that the issue of the constitutionality of the population base remained ripe because any future reapportionment plan will utilize a total census population amount and that because Jefferson County "*must* adopt some reapportionment plan ... this Court could properly provide guidance as to whether the reapportionment plan that is inevitably adopted may use the total census figure as its population base." The Second Circuit rejected these arguments and found the issues in the case not ripe for review. In support of its decision, the Second Circuit reasoned that "it is possible that the defendants will propose and adopt a reapportionment plan that does not use

the total census population figure" and that there was no pending proposal utilizing the total population figure.

■ In the Court's view, *Longway I* and *Longway II* support a finding that the challenge to the validity of Resolution 402 is ripe for judicial review. As in *Longway I*, where the county committed itself to using the data at issue in its reapportionment plan, the Legislature here has committed itself to Resolution 402. Indeed, the facts are more persuasive here than in *Longway I* because the Legislature has already voted on and adopted a reapportionment plan, while in *Longway I* the county had not yet done so. *Longway II* is easily distinguished. In *Longway II*, there was not even a pending proposal before the legislature. Here, the Legislature has already adopted Resolution 402. Although the Court recognizes that it is possible—though highly unlikely—that Resolution 402 may not be formally enacted into law as a result of a potential referendum, the Court finds that the challenge to the validity of Resolution 402 is ripe for judicial review under the principles set forth in *Longway I* and *Longway II.*

In addition, the challenge to Resolution 402 is ripe under the very realistic and practical problems facing all the parties and the public—that they must now begin preparing for the primary election. *See New York v. United States*, 505 U.S. 144, 175, 112 S.Ct. 2408, 2428, 120 L.Ed.2d 120 (1992) (holding that a statute is ripe for challenge when litigants must begin preparing to comply with it); *Blanchette v. Connecticut Gen. Ins. Corp.*, 419 U.S. 102, 143, 95 S.Ct. 335, 358, 42 L.Ed.2d 320 (1974) ("Where the inevitability of the operation of a statute against certain individuals is patent, it is irrelevant to the existence of a justiciable controversy that there will be a time delay before the disputed provisions will come into effect.")

(citing *Pennsylvania v. West Virginia,* 262 U.S. 553, 592–93, 43 S.Ct. 658, 663–64, 67 L.Ed. 1117 (1923)); *see also Arrington v. Elections Bd.*, 173 F.Supp.2d 856, 865 (E.D.Wis.2001) (a three judge court) (stating that for purposes of reapportionment, a lawsuit becomes ripe once residents must begin preparing for the primary election). Based on the foregoing, the Court finds that the plaintiffs' challenge to Resolution 402 is ripe for judicial review.

## B. AS TO EXTENSION OF THE DATES FOR CIRCULATING AND FILING PETITIONS TO QUALIFY FOR THE PRIMARY ELECTION

It is undisputed that an extraordinary direction by the Court extending the dates for circulating and filing petitions is a form of injunctive relief. *See Rodriquez v. Pataki,* No. 02CV618, 2002 WL 1334733 (S.D.N.Y. June 17, 2002) (three judge panel) (enjoining the state petitioning process because the redistricting plan enacted by the state legislature had not been precleared by the United States Department of Justice); *Puerto Rican Legal Def. & Educ. Fund, Inc. v. City of New York,* 769 F.Supp. 74, 79 (E.D.N.Y.1991) (enjoining the state petitioning process to qualify for the primary election until a three-judge panel hears and determines plaintiffs' motion for a preliminary injunction). As such, the plaintiffs must first satisfy the requirements for injunctive relief before these previous fixed dates may be extended.

The second amended complaint asserts three causes of action. The first claim alleges that Resolution 402 fails to provide for a majority Hispanic district and fails to provide the full benefits of the law to Hispanic and African–American communities in violation of Section 2 of the Voting Rights Act of 1965, 42 U.S.C. § 1973. The second claim alleges that the legislative

districts are unequal in population in violation of the Fourteenth Amendment to the United States Constitution. The third claim alleges that Resolution 402 discriminates against the plaintiffs in violation of the Fifteenth Amendment to the United States Constitution.

■ Before the Court considers extending the political calendar, which will cause duplication of work, additional expense and considerable inconvenience, the plaintiffs must satisfy the requirements for a preliminary injunction. In that regard, a preliminary injunction is ordinarily granted when the party seeking the injunction establishes that (1) absent injunctive relief, she will suffer irreparable injury and (2) either (a) a likelihood of success on the merits, or (b) that there are sufficiently serious questions going to the merits of the claims to make them a fair ground for litigation, and a balance of hardships tips decidedly in her favor. *Wright v. Giuliani*, 230 F.3d 543, 547 (2d Cir.2000); *Brenntag Int'l Chems., Inc. v. Bank of India*, 175 F.3d 245, 249 (2d Cir.1999). However, where, as here, "the moving party seeks a preliminary injunction that will affect government action taken in the public interest pursuant to a statutory or regulatory scheme, the injunction will be granted only if the moving party meets the more rigorous likelihood-of-success standard." *No Spray Coalition, Inc. v. City of N.Y.*, 252 F.3d 148, 150 (2d Cir.2001) (*per curiam*) (internal quotation marks omitted); *see, e.g., Rockefeller v. Powers*, 74 F.3d 1367, 1376–77 (2d Cir.1995) (applying the more rigorous standard of preliminary relief in the context of candidate ballot access in a primary election). When such an injunction against the government "will alter rather than maintain the status quo, the movant must show ... [a] substantial likelihood of success." *No Spray Coalition,*

252 F.3d at 150 (internal quotation marks omitted).

Accordingly, the parties are directed to appear before this Court for the purpose of holding an evidentiary hearing with regard to the plaintiffs' burden to show a substantial likelihood of success on the merits, namely their contention that Resolution 402 violates Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution. By reason of the fact that time is of the essence in view of the delays in enacting a valid redistricting plan, this hearing will commence on Friday May 30, 2003 at 9 a.m. to 6 p.m. and will continue, if necessary, on Saturday May 31, 2003 at 9 a.m. until it is concluded. *See Schulz v. Williams*, 38 F.3d 657, 658–59 (2d Cir. 1994) ("We recognize that, as often happens in election cases, the district court had little time to conduct such a hearing.").

In order that there will be a more readily available transition in the event the Court directs an extension of the dates to collect and file petitions for the position of County Legislator, the Court directs the responsible Boards of Elections to prepare a separate circulating petition for that elective position. That separate circulating petition should contain only the names of the legislative candidates and no other elective position.

## C. AS TO THE APPOINTMENT OF A SPECIAL MASTER

Rule 53 of the Federal Rules of Civil Procedure permits a court, under certain circumstances, to appoint a Special Master. Fed.R.Civ.P. 53(a). In redistricting cases, courts have generally appointed Special Masters to prepare a redistricting plan. *See Rodriguez v. Pataki*, 207 F.Supp.2d 1232 (S.D.N.Y.2002) (three judge panel); *Diaz v. Silver*, 978 F.Supp. 96, 99 (E.D.N.Y.1997); *Jackson v. Nassau County Bd. of Supervisors*, 157 F.R.D.

612, 615 (E.D.N.Y.1994); *Fund for Accurate and Informed Representation, Inc.,* No. 92CV283, 1992 WL 512410, at *1 (N.D.N.Y. Dec.23, 1992). Here, the Legislature has adopted a redistricting plan. At the present time, the principal issue before the Court is whether this plan meets the requirements of the Voting Rights Act and the Constitution. This is an issue for the Court to decide, not a Special Master. Accordingly, the Court declines to appoint a Special Master at this time.

## III. CONCLUSION

Based on the foregoing, it is hereby

**ORDERED,** that the challenge to the validity of Resolution 402 under the Voting Rights Act and the Constitution is ripe for judicial review; and it is further

**ORDERED,** that the parties are directed to appear before this Court on May 30, 2003 at 9 a.m. for the purpose of holding an evidentiary hearing to resolve, among other things, the plaintiffs' challenge to Resolution 402 with regard to Section 2 of the Voting Rights Act and the Fourteenth and Fifteenth Amendments to the United States Constitution; and it is further

**ORDERED,** that the evidentiary hearing will continue from day to day, until it is concluded, and it is further

**ORDERED,** that the responsible Boards of Elections prepare a separate circulating petition for the elective position of Suffolk County Legislator. That separate circulating petition should contain only the names of the legislative candidates and no other elective position.

**SO ORDERED.**